Barbara HANDSCHU et al., Plaintiffs,

v.

SPECIAL SERVICES DIVISION a/k/a
Bureau of Special Services et al.,
Defendants.

No. 71 Civ. 2203.

United States District Court,
S. D. New York.

Oct. 24, 1972.

J. Lee Rankin, Corporation Counsel of City of New York, New York City, for defendants; Leonard Bernikow, Frances Milberg, New York City, of counsel.

Martin R. Stolar, Jethro M. Eisenstein, New York City, for plaintiffs; Paul G. Chevigny, New York Civil Liberties Union, New York City, of counsel.

---

EDWARD WEINFELD, District Judge.

This is a class action brought under 42 U.S.C., section 1983, by sixteen individual plaintiffs, affiliated with various named political action groups, on behalf of themselves and others similarly sit-uated for a declaratory judgment and injunctive relief on a claim that various surveillance and other activities over the past six years of the New York City Police Department's Security and Investigation Section (hereafter SIS) have violated, and unless enjoined will continue to violate, their various constitutional rights—in general, the claim is that the alleged activities of SIS were designed to and have the effect of chilling, discouraging and inhibiting plaintiffs and members of the class they purport to represent from expressing and advocating unpopular political and social views and from communicating and associating with one another for that purpose.

The defendants include the Mayor of the City of New York, its Police Commissioner, and other police officials who play a role in the activities of SIS. They move pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss the complaint upon the ground that it fails to state a claim upon which relief may be granted and to set forth a justiciable controversy; further, that it fails to satisfy the requirements of Rule 23. Defendants submit, in support of their motion, an affidavit by the Police Commissioner in which he describes the duties of SIS and its activities—in sum, he states that the practices and procedures followed by SIS in carrying out its intelligence functions are within the scope of the duties imposed by the New York City Charter to protect the health, safety and welfare of the public. The Commissioner denies that SIS' activities have impinged upon plaintiffs' constitutional rights or that they have such purpose, and asserts that in the performance of its functions "all civil and constitutional rights will be scrupulously protected. The request for an injunction is based on an unsupported assumption to the contrary that finds no basis in the few unrelated and isolated events cited."

Nevertheless, the factual allegations contained in the Commissioner's affidavit fail conclusively to refute those set forth by plaintiffs in their complaint. For

example, the complaint alleges that SIS grants access to its files "upon request to academic officials, law enforcement officers, prospective employers, selected individuals and organizations, military and Selective Service officials and others at the whim of [SIS]" and, specifically, made available to the Committee on Character and Fitness of the Appellate Division information as to the political views of two applicants for admission to the bar. The plaintiffs charge that the purpose and effect of this practice is to damage their academic and professional lives and chill the exercise of their First Amendment rights.[1] Commissioner Murphy responds that "[r]equests from outside law enforcement agencies for such information are carefully screened and are not routinely granted," and that the practice of supplying information to the Committee on Character and Fitness other than the criminal records of bar applicants has been discontinued.

In another instance the complaint alleges that agents of SIS threaten and engage in summary physical punishment to deter plaintiffs and members of their class from the exercise of their constitutional rights and that two individuals were "severely beaten" by police officers after SIS agents identified them as political activists. The Commissioner replies that the matter was the subject of a proceeding before the Civilian Complaint Review Board against the officers who allegedly inflicted the beating and that thereafter the matter was referred to the Police Department Trial Room for adjudication; also, that during the investigation before the Civilian Review Board and the grand jury, which failed to return an indictment, no testimony was sought from members of SIS with the implicit suggestion that they were not involved and therefore the allegation of the complaint as to this incident is without substance.

■ While these responses of the Commissioner purport to meet the allegations of the complaint to which they are addressed, it is evident issues of fact exist which preclude a grant of summary judgment under Rule 56. Additionally, the Commissioner's affidavit is devoid of factual content insofar as plaintiffs assert other violations of constitutional rights. Consequently, only the complaint may be considered on defendants' motion and its material allegations must be accepted as true[2] and liberally construed in plaintiffs' favor, and since the action is brought "under the Civil Rights Act, [it] should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts, which could be proved in support of their claims."[3]

The complaint alleges that certain practices and conduct of SIS infringe plaintiffs' constitutional rights and these are set forth under seven specific categories: (1) informers; (2) infiltration; (3) interrogation; (4) overt surveillance; (5) summary punishment; (6) intelligence gathering; (7) electronic surveillance. In end result it is charged that these practices have a "chilling effect" on plaintiffs and members of their class in the exercise of their constitutional rights of freedom of speech, assembly and association; that they violate their rights against unlawful search and seizure because the SIS proceeds without obtaining warrants or judicial authorization; also that they violate their rights of privacy and to substantive and procedural due process; and finally,

1. *Cf.* National Student Ass'n v. Hershey, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1111 (1969).

2. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967).

3. Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *see also* Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968).

that the effect of such activities is to visit upon them cruel and unusual punishment. Thus, the broad sweep of plaintiffs' complaint charges violations of the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

The starting point and a guide in considering the defendants' motion to dismiss is the scope of the recent holding in Laird v. Tatum,[4] decided after this motion was argued. There the Supreme Court held that plaintiffs' allegations that the mere existence of the Army system of surveillance of lawful and peaceful civilian activity chilled the exercise of their First Amendment rights did not present a justiciable controversy in the absence of a showing of objective harm or a threatened future harm. The surveillance system under attack in *Tatum* gathered information about protest activities principally from news media, publications in general circulation, and army intelligence officers who attended public meetings and wrote reports describing the meeting, the identity of sponsoring organizations and speakers, the attendance and whether any disorders had occurred. The information was compiled at headquarters, disseminated at army posts throughout the country and stored in a computer bank. Chief Justice Burger summarized the procedure in quoting the Court of Appeals: " . . . the information gathered is nothing more than a good newspaper reporter would be able to gather by attendance at public meetings and the clipping of articles from publications available on any newsstand."[5] The majority specifically acknowledged prior Supreme Court authorities,[6] which "fully recognize that governmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights."[7] But then it went on to hold that plaintiffs' allegation of a "subjective chill" did not meet the test of "a specific present objective harm" or a threat of "a specific future harm"—a requisite to the invocation of the jurisdiction of a federal court. The narrow holding of the Court was that on the record the plaintiffs did not present a case or controversy for judicial determination.

The claims centering about informers and infiltrators intertwine in some respects and may be considered together. The complaint alleges that SIS regularly recruits paid and unpaid informers to join, and regularly assigns police officers to infiltrate, political and social organizations and report on the activities of such groups and their members. The use of secret informers or undercover agents is a legitimate and proper practice of law enforcement and justified in the public interest—indeed, without the use of such agents many crimes would go unpunished and wrongdoers escape prosecution. It is a technique that has frequently been used to prevent serious crimes of a cataclysmic nature.[8] The use of informers and infiltrators by itself does not give rise to any claim of violation of constitutional rights.[9] However, those so engaged may

---

4. 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).

5. *Id.* at 9, 92 S.Ct. at 2323.

6. Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

7. 408 U.S. at 12–13, 92 S.Ct. at 2325.

8. *See* Sorrells v. United States, 287 U.S. 435, 441–442, 53 S.Ct. 210, 77 L.Ed. 413 (1932); United States v. Dennis, 183 F.2d 201, 224 (2d Cir. 1950), aff'd on other grounds, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

9. *Cf.* Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U.S. 206, 208–209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); Sorrells v. United States, 287 U.S. 435, 441–442, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

not overstep constitutional bounds; the Bill of Rights protects individuals against excesses and abuses in such activities.[10] Also, while those bent upon crime may be afforded the opportunity to carry through their illicit purpose, the initiation and inducement of criminal activity by government agents is proscribed.[11] Plaintiffs' challenge here is not to the use of informers and undercover agents as such, but to conduct of SIS and its agents that allegedly exceeds permissible limits and goes far beyond legitimate surveillance activities with the intent and purpose to invade their constitutional right of free association and communication. Thus, the complaint alleges that the informers and infiltrators provoked, solicited and induced members of lawful political and social groups to engage in unlawful activities. In the instance of infiltrating police officers, it is alleged that in addition to urging members to participate in unlawful activity, they provided funds and equipment to further that purpose. Specific instances of such conduct are cited, including the alleged inducement of members of named organizations, to which some plaintiffs belong, to participate in armed robbery, with resulting arrests, indictments and trials upon the charges, ending in acquittals, and upon another occasion to plan the bombing of a government facility.

The complaint further charges that the agents, in their reports to SIS, which in some instances are daily, include information concerning persons, places and activities entirely unrelated to legitimate law enforcement purposes, such as lists of those attending meetings of lawful organizations; that SIS has kept such reports and maintains dossiers of such persons based solely on their lawful association with such organizations, including some of which individual plaintiffs are members. The essence of the

claim is that SIS systematically engages in these excesses and abusive tactics and activities with the purpose and effect of sowing distrust and suspicion among plaintiffs and other who espouse unorthodox or dissenting political and social views, thereby discouraging them from associating for that purpose due to fear of acts of provocation, unjustified arrest and the compilation and indiscriminate dissemination of the dossiers above described; further, plaintiffs charge that they also were designed to and have the effect of deterring others similarly minded from joining their respective groups—in sum, the claim is that the totality of conduct in excess of legitimate undercover activity has effectively deprived and continues to deprive plaintiffs and the members of their class of their First Amendment rights of freedom of communication and association, as well as other rights.

Under this claim plaintiffs allege a specific instance in which the conduct of SIS caused the curtailment of activities protected by the First Amendment. They charge that an anti-Vietnam organization of veterans disbanded due to the actions of a named informer working with SIS, who urged members of the veterans organization to participate in unlawful conduct at demonstrations as part of a plan fostered by SIS to create an atmosphere among its members of mistrust, suspicion and hostility so as to prevent their free and lawful association with one another and to chill their interest in the exercise of their right of free expression and association. Thus, the general allegations and the specific instances referred to charge a direct injury as a result of governmental action and threatened future harm, which at once brings the complaint beyond the pale of *Tatum*.

Of course this Court does not pass on the verity of these allegations. Whether

---

10. Lewis v. United States, 385 U.S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

11. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *cf.* United States v. Dennis, 183 F.2d 201, 224 (2d Cir. 1950), aff'd on other grounds, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

or not plaintiffs can sustain them is not the issue. At this pleading stage it cannot be said that it appears " 'to a certainty that the plaintiff[s] would be entitled to no relief under any state of facts which could be proved in support of [their] claim.' " [12] A hearing may establish that some of the alleged informer and infiltration activities are unrelated to legitimate law enforcement functions, and when systematically employed have the potential of deterring and impeding plaintiff protest organizations in the lawful exercise of their constitutional rights. This chilling potential would seem by far to exceed the passive observational activities upheld in *Tatum*. If, as plaintiffs charge, the alleged abuses attributed to informers and infiltrators are still the practice, they also may have the effect of inhibiting those who desire to join existing protest groups, but refrain because of knowledge that upon joining they would be subjected to excessive surveillance activities.

Significantly, the Police Commissioner does not contend that all the practices complained of are justified by the legitimate needs of law enforcement. He insists, however, that if any police excesses charged in the complaint did occur, "they are aberrations in violation of departmental policy" and that to prevent abuses of authority the department maintains a number of internal controls to detect such unlawful conduct and punish the violators. However, if in fact there were any such "aberrations" which amounted to a pattern of unconstitutional conduct, of which the defendants should have been aware, plaintiffs would be entitled to injunctive relief to prevent a continuance thereof.[13] Whether they can prevail on such a claim can only be determined from presentation of evidence.[14]

Since the foregoing informer and infiltration activities are sufficient to state a claim for relief, it is unnecessary for the purposes of this motion to consider the remaining categories of conduct complained of under plaintiffs' broad claim. Some of the activities complained of are clearly proper enforcement practices which by themselves do not state a claim and a justiciable controversy, whereas others, as noted, are sufficient.

Accordingly, the defendants' motion to dismiss the complaint is denied.

■ There remains for consideration defendants' challenge to the maintaining of this suit as a class action. Whether or not plaintiffs may represent others similarly situated turns on a factual situation more complex than that presented in the usual case. In the circumstances, the class action determination is left for determination by the judge to whom this matter has been assigned.[15]

12. Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968), quoting Barnes v. Merritt, 376 F.2d 8, 11 (5th Cir. 1967); *see also* Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

13. Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969).

14. *See* Build of Buffalo, Inc. v. Sedita, 441 F.2d 284, 289 (2d Cir. 1971).

15. *See* Yaffe v. Powers, 454 F.2d 1362 (1st Cir. 1972); Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947, 956 n. 21 (1971), rev'd on other grounds, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972).