**PHILADELPHIA YEARLY MEETING OF the RELIGIOUS SOCIETY OF FRIENDS, et al.**

v.

**James H. J. TATE, Mayor, City of Philadelphia, et al.**

**Civ. A. No. 71–849.**

United States District Court, E. D. Pennsylvania.

Oct. 17, 1974.

David Rudovsky, Philadelphia, Pa., for plaintiffs.

Murray C. Goldman, Philadelphia, Pa., for defendants.

## MEMORANDUM

GORBEY, District Judge.

This is an action seeking damages and injunctive relief as a result of the operation of the Philadelphia Police Department's surveillance and intelligence activities. On July 14, 1972, this court denied defendants' motion to dismiss. The parties then engaged in settlement negotiations extending over a year and a half. When it was finally concluded that the case could not be settled, the plaintiffs moved for designation of a class. This motion was denied by this court on March 20, 1974. Defendants have now moved for reconsideration of our denial of its motion to dismiss based on case law which has developed since the denial of the original motion. Most significantly defendants rely on the Supreme Court's reversal of the D.C. Circuit Court in the case of Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed. 2d 154 (1972) and Donohoe v. Duling, 465 F.2d 196 (4th Cir. 1972). It appears from a reading of the complaint that with one exception plaintiffs' allegations go no further than those contained in Laird v. Tatum, *supra,* and Donohoe v. Duling, *supra,* where the Courts dismissed cases which dealt with governmental surveillance and distribution systems as not presenting a justiciable controversy. In dismissing the Laird case the Supreme Court stated, 92 S.Ct. at page 2324.

> "The issue presented . . . [is] . . . whether the jurisdiction of a federal court may be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose . . ."

Continuing 92 S.Ct. at page 2325.

> "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; . . ."

The critical issue in this case is raised by paragraph 15 of the plaintiffs' complaint. This paragraph reads as follows:

> "15. The Philadelphia Police Department has in the past improperly and unlawfully publicized its political intelligence gathering system by the unauthorized and unlawful public disclosure of information concerning named individuals and groups who are the subject of police intelligence dossiers. On June 2, 1970 in a nationwide, network television broadcast the defendants Rizzo and Fencl and their agents publicly discussed the Philadelphia Police Department dossier system and unlawfully and improperly disclosed the names of certain groups and individuals on whom such dossiers are maintained. These groups included The Friends Peace Committee, the plaintiff Philadelphia Resistance and the plaintiffs Brand, Chomsky, Wolf and Avirgan, none of whom authorized the use of their names on the aforesaid television program."

Paragraph 16 of the complaint makes a general allegation that:

> "The practices described above (including those contained in paragraph 15) significantly deter the free exercise, by dissident persons, of rights of political association, assembly and speech. Persons holding political views deemed improper or unorthodox by the police are deterred from engaging in political activity in support of their views, from stating their views in public, and from joining with others in pursuance of their views."

It appears to this court that as stated before absent the allegation of the improper disclosure on June 2, 1970, it would be clear that the complaint should be dismissed. Thus the only question to be resolved is does the allegation concerning the disclosure on June 2, 1970, constitute a claim for specific present

objective harm or a threat of specific future harm so as to present this court with a justiciable controversy.[1]

In essence, this claim is that as a result of this one "improper and unlawful" disclosure that they are chilled in the exercise of their First Amendment rights.

In deciding whether the Tatum decision should apply to the case at bar, it is relevant to note that Justice Douglas in his dissent, at page 2332, 92 S.Ct. stated:

> "The intelligence reports were regularly and widely circulated and were exchanged with reports of the FBI, state and municipal police departments, and the CIA."

Thus widespread disclosure in itself would not give rise to a cause of action. It is relevant to note that plaintiffs' only allegation of harm in the case at bar regarding the alleged disclosure is that it "chilled" their First Amendment rights. This is contained in paragraph 16 of the complaint. We do not think that the allegations in paragraphs 15 and 16 of the plaintiffs' complaint constitute the specific allegation of harm required by the Tatum decision.

The only harm alleged is essentially a subjective complaint of a chilling effect on their First Amendment rights, which Tatum specifically held was not sufficient to present this court with a justiciable controversy. In the Tatum case not only the existence of the files, but their contents were widely disseminated. We do not think that the allegation of one public disclosure of merely the existence of the files in question absent some allegation of harm other than subjective complaints of "chill" meets the Tatum test of a *"specific* present *objective* harm or a threat of *specific* future harm"*. (Emphasis added.)

To hold otherwise would mean that every time it became public knowledge that the police were investigating the activities of an individual or group, a cause of action such as the one asserted in this case may arise. Such a result would unduly hamper the police in the legitimate exercise of their duties. While we do not approve of disclosures such as occurred in this case, we do not think that it raises plaintiffs' complaint of a "chilling effect" on their First Amendment rights to the level of a justiciable controversy.

In the case of Finley v. Hampton, 154 U.S.App.D.C. 50, 473 F.2d 180 (1972), the court rejected the plaintiff's claim of a chilling effect upon the exercise of his First Amendment right to freedom of association. The plaintiff was an employee of the FHA, whose position was declassified as a result of a security investigation which allegedly contained information regarding homosexual activities on the part of several acquaintances of the plaintiff. The court stated at page 185:

> "Finley contends that the gathering and retention of information concerning his acquaintances and their mannerisms has a 'chilling effect' upon the exercise of his right to freedom of association. 'Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. . . .' Laird v. Tatum, *supra,* at 13–14, 92 S.Ct. at 2325. See also, United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947)(cited with approval in Laird v. Tatum); Davis v. Ichord, 143 U.S.App.D.C. 183, 442 F.2d 1207 (1970). Thus, to present a justiciable controversy, it must be shown that the asserted inhibition upon the exercise of constitutional rights arises in the context of an extant or imminently threatened governmental sanction."[11]

In footnote 11 to the above-cited quotation the court discussed examples of such governmental actions which gave

---

1. The named plaintiffs include persons who were named in the June 2, 1970 broadcast and some persons who were not mentioned in that broadcast. Due to our conclusion in this memorandum we need not decide whether those who were not so named are properly plaintiffs in this action.

rise to a justiciable controversy. These included a contempt citation, criminal prosecution, exclusion from a profession and threat of conscription. From footnote 12 of the Finley opinion it is 'obvious that the material in question became public knowledge for it stated that "Finley claims that the 'evidence' developed by the FFI unleased a flurry of gossip in his office with the result that he became the subject of harassment by his fellow employees." This is certainly a more serious situation than the case at bar, where only the existence and not the contents of the investigative files in question were disclosed.

Accordingly, defendants' motion for reconsideration will be granted and the complaint will be dismissed.