**Allard K. LOWENSTEIN, Plaintiff,**

v.

**John J. ROONEY et al., Defendants.**

**No. 74 C 593.**

United States District Court,
E. D. New York.

July 31, 1975.

Leon Friedman, Hempstead, N.Y., for plaintiff; Melvin L. Wulf, and John H. F. Shattuck, American Civil Liberties Union, New York City, of counsel.

David G. Trager, U.S. Atty., E.D.N. Y., for defendants Kelley, Doe and Roe; Douglas J. Kramer, Asst. U.S. Atty., of counsel.

## MEMORANDUM and ORDER

COSTANTINO, District Judge.

In this action plaintiff Allard K. Lowenstein, a former candidate for Congress in the 14th Congressional District in Brooklyn, New York, seeks declaratory and injunctive relief and damages against various present and former government officials for their alleged improper and unlawful conduct toward him. This opinion considers those motions to dismiss and for summary judgment which have been submitted to the court at this time. To deal with these motions an overview of the entire complaint is necessary.

The first cause of action alleges that certain unknown agents of the Federal Bureau of Investigation (John Doe and Richard Roe) conspired with the defendant Congressman John J. Rooney in 1972 to search FBI records and to investigate the private and political activities of the plaintiff. It is alleged that the investigation was unlawful and was performed as a result of the close relationship that had developed between Congressman Rooney and the FBI because Congressman Rooney was Chairman of the House Subcommittee on Appropriations for State, Justice, Commerce, and the Judiciary, the Subcommittee which recommends appropriations for the FBI. Plaintiff alleges that the information obtained through this investigation is still contained in FBI files under the control of defendant Kelley. He asserts that he has been:

> injured and burdened in the exercise of his First Amendment right to engage in political activities without being the subject of illegal surveillance, information gathering and dissemination by the defendants under color of law. Such acts also invaded his Fourth, Fifth and Ninth Amendment rights to be free from government intervention into his private life.

Plaintiff further asserts that the activities alleged constituted a conspiracy in violation of Title 42, United States Code, section 1985, and that the "rights of the voters within the 14th Congressional District to exercise their electoral rights without being the target of deceptive or illegal practices by the defendants or their agents" were violated.

The second cause of action in the complaint is broader in scope than the first. It alleges that as a result of plaintiff Lowenstein's political activities, including opposition to the Nixon Administration's policies in Vietnam and his organ-

ization of efforts to register young voters, officials of the Administration, including the defendants Colson, Dean, Higby, Ehrlichman and Haldeman, attempted to injure him by improperly utilizing agencies of the federal government.[1]

Specifically, the complaint alleges that the defendants Colson, Dean and Higby prepared an "enemies list" or "political opponents list" of persons who would be subject to harassment by agencies of the government. Plaintiff Lowenstein was on that list. Another allegation is that the defendants Colson, Higby, Haldeman and Ehrlichman with the assistance of defendant Caulfield "urged and/or ordered" the Internal Revenue Service to audit the income tax returns of plaintiff. Plaintiff alleges that as a result of these efforts and with the aid of defendant Barth, there was an audit of his 1969 federal tax return and, at the request of the Internal Revenue Service, his 1970 New York State income tax return.[2] The complaint further alleges that information about plaintiff's political activities was gathered unlawfully. The defendants Colson, Dean, Ehrlichman, Haldeman, Higby, Caulfield, and Barth are sued in their "individual and former official capacities." Defendants Rooney, Doe and Roe are sued in their individual and official capacities. Defendants Kelley and Alexander are sued in their official capacities as custodian of certain records. The second cause of action alleges the same injuries as the first cause of action.

Lowenstein requests the following relief: a declaratory judgment that the alleged activities violated his First, Fourth, Fifth and Ninth Amendment rights and are beyond any statutory authority; a permanent injunction restraining the defendants and their agents from engaging in the activities declared to be unconstitutional and illegal; a mandatory injunction and writ of mandamus ordering defendants Kelley and Alexander to produce for destruction all files, records and reports relating to the activities alleged; monetary damages against all defendants except Kelley and Alexander for violation of plaintiff's rights; punitive damages; and reasonable costs and attorneys' fees.

The motions presently before the court are as follows:

(1) Motion on behalf of defendants Kelley, John Doe and Richard Roe to dismiss the first cause of action on the ground that there is no case or controversy and no justiciable dispute between the parties, Rule 12(b)(1) and (6), Fed.R.Civ.P.;

(2) Motion on behalf of the fictitious parties John Doe and Richard Roe to dismiss the first cause of action on the ground that they are improper parties and relief may not be granted as to them, Rule 12(b)(6), Fed.R.Civ.P.;

(3) Motion on behalf of the fictitious parties John Doe and Richard Roe, for summary judgment on the ground that no unlawful FBI investigation was conducted, Rule 56, Fed.R.Civ.P.;

(4) Motion on behalf of defendant Haldeman to quash service of process, Rule 12(b)(2)(3)(4) and (5), Fed.R.Civ.P.; and

(5) Motion on behalf of defendant Higby to quash service of process, Rule 12(b)(2)(3)(4) and (5), Fed.R.Civ.P.

---

1. The action against the defendant Dean was dismissed with prejudice on April 4, 1975 upon the stipulation of the attorney for plaintiff.

2. The action against the defendant Barth is to be dismissed with prejudice upon the stipulation of the attorney for plaintiff. Additionally, plaintiff has conceded that the tax audit mentioned in the complaint was not improper. However, he desires to maintain the action against the defendant Alexander as "custodian of certain records" because of the possibility that some of the information obtained in the alleged investigations may still be in the files of the Internal Revenue Service.

## JUSTICIABILITY

 The first motion is based upon the contention of the FBI defendants in the first cause of action (Kelley, Doe and Roe) that plaintiff has not stated a justiciable claim. The judicial power of federal courts is limited by Article III of the Constitution to situations where a "case" or "controversy" is involved. The doctrine of justiciability is utilized by the courts to define these terms.

> Justiciability is . . . a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable. Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.

*Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). The Supreme Court in *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), *reh. denied*, 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972), set down the standards which this court must follow in judging the justiciability of the questions plaintiff raises. The plaintiff must claim that "he has sustained, or is immediately in danger of sustaining, a direct injury as a result" of the governmental action he is attacking. 408 U.S. at 13, 92 S.Ct. at 2325, quoting from *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). Stated differently, the Court said:

> Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.

408 U.S. at 13–14, 92 S.Ct. at 2325. This court must determine whether the injuries claimed are not so subjective and non-specific as to justify "invok[ing] the judicial power to determine the validity of executive . . . action," *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). This requires an examination of the factual backgrounds of several of the cases in which the standard has been utilized.

*Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), was a suit in which alleged "targets" of United States Army "surveillance" of "peaceful civilian political activity" sought declaratory and injunctive relief on the ground that the surveillance "chilled" their First Amendment rights. A divided Court of Appeals reversed the District Court's dismissal of the complaint and held that plaintiffs had presented a justiciable controversy even though the "chilling" was allegedly caused not by any "specific action of the Army against them, [but] only [by] the existence and operation of the intelligence gathering and distributing system, which is confined to the Army and related civilian investigative agencies." 144 U.S.App. D.C. 72, 444 F.2d 947, 953 (1971). The Supreme Court in quoting from the opinion of the Court of Appeals, noted that there was "no visible injury," "no specific action of the Army against them," "no evidence of illegal or unlawful surveillance activit[y]," no "clandestine intrusion by a military agent," in fact "nothing more than a good newspaper reporter would be able to gather by attendance at public meetings and the clipping of articles from publications available on any newsstand." 408 U.S. at 9, 92 S.Ct. at 2323. Additionally, the Court noted that it was not improper for the Army to collect the information, it being necessary to assist the Army's efforts in aiding local authorities with domestic violence. 408 U.S. at 3–8, 92 S.Ct. 2318.

The Supreme Court concluded that the Court of Appeals had correctly identified the issue as follows: may "the jurisdiction of a federal court . . . be invoked by a complainant who alleges that the exercise of his First Amendment rights is being chilled by the mere

existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." 408 U.S. at 10, 92 S. Ct. at 2324. The Court answered that it could not. However, the Court stated that "there is nothing in our nation's history or in this Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied." 408 U.S. at 16, 92 S.Ct. at 2327.

The Court of Appeals in *Fifth Avenue Peace Parade Committee v. Gray*, 480 F. 2d 326 (2d Cir. 1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974), affirmed the dismissal of a complaint upon the grounds stated in *Laird v. Tatum, supra*. In *Fifth Avenue*, the contention was that an FBI investigation conducted immediately prior to the November 14–16, 1969 Moratorium Demonstration in Washington, D.C. and the dissemination of the FBI reports of this investigation to other government agencies, would have a chilling effect upon the First Amendment rights of the plaintiffs. The court held that whatever factual distinctions existed between *Tatum* and *Fifth Avenue* established that the plaintiffs in the latter had a weaker case than the plaintiffs in *Tatum*. The Court of Appeals determined that the "specific" harm that plaintiffs claimed distinguished their case from *Tatum*, created less of an "understandable apprehension of inhibition of First Amendment rights," than the actions complained of in *Tatum*. 480 F.2d at 331. The Court also held that the investigation by the FBI was legitimate in that the agency had a "responsibility for the maintenance of public safety and order during the gigantic demonstration planned for Washington, D.C." 480 F. 2d at 332. The court noted further that the investigation itself was in no way improper. There was no illegal intelli-

gence gathering and no misuse of the information obtained.

In Judge Oakes' dissent in *Fifth Avenue* he noted a tendency to justify the invasion of constitutional rights on the basis of national security. 480 F.2d at 333. On the justiciability question he wrote that, "I think the holding [in *Laird v. Tatum*] was 'narrow[ly]' limited to general surveillance without specific misuse of data." (citations omitted). 480 F.2d at 336. He further questioned "whether the *Tatum* case might not be qualified today," because of facts which came to light after the decision was rendered. 480 F.2d at 336–37.

In *Handschu v. Special Services Division*, 349 F.Supp. 766 (S.D.N.Y.1972), Judge Weinfeld denied the motion of the defendants to dismiss on *Laird v. Tatum* grounds. He held that the allegations in the complaint that various surveillance and other activities of the New York City Police Department's Security and Investigation Section against several political groups were "specific" enough to distinguish that case from *Tatum*. The complaint in *Handschu* alleged use of informers, infiltration, interrogation, overt surveillance, summary punishment, intelligence gathering and electronic surveillance.

There have been several other recent decisions in which plaintiffs have attempted to circumvent the strictures of *Laird v. Tatum* but have not succeeded because the courts determined that the injuries were "subjective" or "speculative." *See Philadelphia Yearly Meeting of Relig. Soc. of Friends v. Tate*, 382 F. Supp. 547 (E.D.Pa.1974); *Gardels v. Murphy*, 377 F.Supp. 1389 (N.D.Ill. 1974); *Finley v. Hampton*, 154 U.S.App. D.C. 50, 473 F.2d 180 (1972); *Donohoe v. Duling*, 465 F.2d 196 (4th Cir. 1972).

Plaintiff contends that he has been specifically injured in the exercise of his First Amendment right "to engage in political activities without being the subject of illegal surveillance," and that

the continued existence of the information in FBI files provides a justiciable controversy. He claims that the allegations, if proven would entitle him to a declaratory judgment that the activities were unlawful, an injunction against the future use of the information, and damages. The moving defendants maintain that the allegations are vague and "subjective," thus falling within *Tatum's* limits, as to past activities, and that the possibility of future injury is "speculative," thus eliminating the necessity of prospective relief. Accepting the allegations of the complaint as true for the purpose of this motion[3] the following is alleged in the first cause of action: (1) a conspiracy was entered into between the defendant Rooney and unknown agents of the FBI to use FBI resources during plaintiff's election campaign; (2) as part of this conspiracy FBI records were searched for information about the plaintiff; (3) as part of the conspiracy a field investigation was conducted by FBI agents to discover facts about plaintiff's private life and political activities; (4) these investigations were made in bad faith with knowledge that it was beyond the jurisdiction of the FBI; (5) substantial information was collected by FBI agents as a result of these investigations; (6) this information was delivered to defendant Rooney or his agents and used by him in the primary campaign; (7) the information is still contained in FBI files.

The court has before it, in addition to the complaint, the affidavit of John A. Mintz, an Assistant Director of the Federal Bureau of Investigation. The relevant paragraph of Mr. Mintz's affidavit states:

> He [Mr. Mintz] found that there are references in the FBI files to Allard K. Lowenstein which are probably identifiable with plaintiff Lowenstein, however, he found no record that any FBI investigation was conducted of the plaintiff during 1972 or the 1972 Democratic Primary campaign, and no record that other resources of the FBI were made available to Congressman John J. Rooney or his agent concerning the plaintiff during 1972.

Mr. Mintz's affidavit does not refute the allegations of the complaint. All he asserts is that a search was made of FBI files and that "no record" of an FBI investigation during 1972 exists now and that "no record" that "other resources" of the FBI were made available to defendant Rooney during 1972 exists now. Further reference to this affidavit will be made below in the discussion of the motion for summary judgment on the first cause of action.

Are the allegations here more "specific" and "objective" than those of *Tatum* and *Fifth Avenue*? In both of those cases the courts found that the information at issue was derived from open meetings and other public sources; in this suit it is alleged that an investigation by the FBI was conducted. In *Tatum* and *Fifth Avenue*, the courts concluded that the investigations were legally carried out and had a lawful objective; in this case it is alleged that the FBI and defendant Rooney conspired together to give information in bad faith to aid in the primary campaign, and it is specifically alleged that the surveillance was illegal. In *Tatum* the records had been destroyed; the information obtained here may still be in some government files. The injury claimed in *Tatum* was a nonspecific "chill" to numerous persons' First Amendment rights merely because the reports existed and were disseminated; here an investiga-

---

3. "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

tion of one man is at issue, with an alleged specific objective in mind and a specific means to accomplish that objective.

■ In making the decision as to whether this suit is justiciable, this court must also consider that plaintiff seeks declaratory as well as injunctive relief. The Declaratory Judgment Act, 28 U.S.C. § 2201, of course, neither creates nor enlarges jurisdiction; it merely creates an additional remedy where an actual controversy already exists. *Skelly Oil v. Phillips Petroleum,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). As the Supreme Court elaborated in *Maryland Casualty v. Pacific Coal and Oil Company,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

See also *Golden v. Zwickler,* 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell,* 330 U.S. 75, 89–91, 67 S.Ct. 556, 91 L.Ed. 756 (1947); *Laird v. Tatum, supra; Poe v. Ullmans,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); *Communist Party v. SACB,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961); *McCahill v. Borough of Fox Chapel,* 438 F.2d 213, 215–17 (3rd Cir. 1971); *Mercer v. Michigan State Bd. of Ed.,* 379 F.Supp. 580 (E.D.Mich.1974).

While no party has specifically addressed itself to the issue of "mootness," this court takes note of the approach of the Supreme Court to cases in which mootness is an issue because of its bearing on whether the allegations herein are "speculative." Furthermore, the concept may have relevance to this suit because many of the defendants are sued as "former" officials and the administration which is alleged to have engaged in the unlawful acts charged herein is no longer in office. The Supreme Court recently stated that "pleadings must be something more than an ingenious exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." *United States v. SCRAP,* 412 U.S. 669, 688–89, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). A danger is not speculative if there is a "continuing and brooding presence" over plaintiff. *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). It must be determined whether the injury alleged is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

■ Utilizing these guidelines, this court must evaluate the allegations of the complaint to determine whether plaintiff states a justiciable controversy. While the allegations of the first cause of action do not state a claim as "specific" as those stated in *Handschu v. Special Services Division, supra,* this court concludes that the plaintiff has made sufficiently objective and specific allegations to survive a motion to dismiss based upon *Tatum's* justiciability tests. Furthermore, this court concludes that the injuries pleaded are not so "speculative" as to compel this court to dismiss the complaint. The plaintiff seeks damages as well as declaratory and injunctive relief. If he can prove that he has been injured, he is entitled to those damages. As for the continued exis-

tence of improper files in the Government's possession, if plaintiff can prove his allegations, these should be destroyed. *Menard v. Saxbe,* 162 U.S. App.D.C. 284, 498 F.2d 1017 (1974); *Tarlton v. Saxbe,* 507 F.2d 1116 (D.C. Cir. 1974). Of course, the appropriate remedies must await trial. Accordingly, the motion to dismiss on justiciability grounds is denied.

## FICTITIOUS DEFENDANTS

■ In the second motion the government moves to dismiss the complaint as to John Doe and Richard Roe on the ground that it is improper to sue fictitious parties. If the basis for jurisdiction of this action were diversity of citizenship, the contention might have merit, 2A Moore's, Federal Practice ¶ 8.10, p. 1664; but here jurisdiction is based upon a federal question. Moreover, these defendants are sued as "unknown employees of the F.B.I. and other agencies of the federal government." In other words, they are real persons whose names are not yet known to plaintiff. They are like the "Six Unknown Agents of the Federal Bureau of Narcotics" in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Accordingly, the motion to dismiss because fictional persons are being sued is denied.

## SUMMARY JUDGMENT

The government moves for summary judgment as to the unknown FBI agents in the first cause of action on the ground that no unlawful investigation was conducted (motion 3). A Rule 56 motion may be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The parties have submitted statements pursuant to Rule 9(g) of the Rules of the United States District Court for the Eastern District of New York.

■ The FBI defendants assert that "there is no material in the files of the Federal Bureau of Investigation concerning the plaintiff herein that was collected during 1972 or the 1972 Democratic Primary campaign." This reflects the affidavit of John A. Mintz, an Associate Director of the FBI, mentioned above. Plaintiff's Rule 9(g) statement states that there remain genuine factual issues as to:

(1) Whether unknown FBI agents did assist defendant Rooney during the 1972 Democratic Primary campaign by supplying him with information about plaintiff and/or following and observing his activities;

(2) Whether the information and material admittedly in the FBI files about plaintiff was obtained during the 1972 Democratic Primary campaign;

(3) Whether the new investigation ordered by the defendant Kelley about FBI information on members of Congress has revealed any new material relating to plaintiff;

(4) Whether the material formerly found in J. Edgar Hoover's files contained information about plaintiff and has been retained anywhere in present FBI files.

Mr. Mintz's affidavit does not contend that the allegations of the complaint are not true with regard to the FBI and Congressman Rooney. Since it appears that a "genuine issue of fact" does exist the motion for summary judgment on behalf of the FBI defendants (motion 3) must be denied.

## VENUE

The fourth and fifth motions involve questions arising under 28 U.S.C. § 1391(e). This section states:

A civil action in which each defendant is an officer of the United States or any agency thereof *acting in his* official capacity or under color of legal authority or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: . . . (4)

the plaintiff resides if no real property is involved in the action.

The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action was brought.

Defendant Higby argues that section 1391(e) was not designed for actions based upon alleged torts but rather was enacted to facilitate review of administrative determinations which could only have been made in the District of Columbia prior to its enactment. Higby further asserts that if section 1391(e) is inapplicable this court does not have jurisdiction over him because he has performed no acts in New York which would expose him to New York long-arm jurisdiction under C.P.L.R. § 302. Higby also argues that by its terms section 1391(e) requires that "each" defendant must be an officer or employee of the United States, and that since it has been held that Congressmen are not subject to the section, *Liberation News Service v. Eastland*, 426 F.2d 1379 (2d Cir. 1970), and since Congressman Rooney is a defendant, section 1391(e) is inapplicable. Lastly, Higby contends that since he is a *former* government employee service under section 1391(e) is void. Defendant Haldeman asserts that he has committed no acts which would subject him to New York long-arm jurisdiction.

Plaintiff Lowenstein answers these contentions as follows. As to defendant Higby's argument concerning the type of action section 1391(e) was intended to facilitate, plaintiff points to the language of the section itself. It does not limit its application to review of administrative actions; the section specifically allows a civil action to be brought against an official or employee of the United States (or any agency thereof) acting in his official capacity or under color of legal authority. As to defendant Higby's argument that "each" defendant must be a government official, plaintiff points to a footnote in *Liberation News Service v. Eastland*, 426 F.2d 1379, 1383, n. 5 (2d Cir. 1970), which states:

We are in accord with decisions such as *Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development*, 284 F.Supp. 809 (E.D. Pa.1968) . . . which have held that the statutory requirement that "each defendant" be a Government official refers only to those defendants as to whom plaintiffs seek to justify venue and personal jurisdiction under § 1391(e).

Plaintiff asserts that venue is proper as to defendant Rooney under 28 U.S.C. § 1391(b)—Rooney is a resident of the Eastern District of New York. With regard to the contention that "former" officials may not be sued, plaintiff argues that to follow defendants' reasoning would defeat the purposes of the statute. He argues that an official should not be able to defeat an action against him for illegal acts merely by resigning his position. Furthermore, venue for the second cause of action would be proper in the District of Columbia, pursuant to 28 U.S.C. § 1391(b), and since section 1391(e) was intended to permit actions which could only be brought in the District of Columbia to be brought in other districts, *Schlanger v. Seamans*, 401 U.S. 487, 490, n. 4, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971), venue in the Eastern District of New York is proper.

Defendant Higby's arguments regarding the type of action section 1391(e) was intended to authorize and the requirement that *each* defendant must be an officer of the United States are rejected. The disposition of the motions by defendants Higby and Haldeman to quash service depend upon the answer to the contention that section 1391(e) may not be used against former govern-

ment officers when injunctive and declaratory relief as well as damages are sought.

The insertion of the phrase "acting under color of legal authority" was described by the House Committee which considered the section:

> By including the officer or employee, both in his official capacity and acting under color of legal authority, the committee intends to make the proposed section 1391(e) applicable not only to those cases where an action may be brought against an officer or an employee in his official capacity. It intends to include also those where the action is nominally brought against the officer in his individual capacity even though he was acting within the apparent scope of his authority and not as a private citizen. Such actions are also in essence against the United States but are brought against the officer or employee as individual only to circumvent what remains of the doctrine of sovereign immunity. The considerations of policy which demand that an action against an official may be brought locally rather than in the District of Columbia require similar venue provisions where the action is based upon the fiction that the officer is acting as an individual. There is no intention, however, to alter the venue requirements of Federal law insofar as suits resulting from the official's private actions are concerned.

H.R. 1960, 87th Cong., 1st Sess. (1961); see H.R.Rep. No. 536, at 3–4.

The actions complained of by the plaintiff clearly were committed "under color of legal authority." To assert that because the defendants are no longer in government service the plaintiff may not utilize section 1391(e)—a section clearly intended to permit such actions —would, as plaintiff contends, defeat the purposes of the statute. If the defendants desire to invoke official immunity, they may do so directly. Since service was proper under section 1391(e), the motions of defendants Haldeman and Higby (motions 4 and 5) are denied.

## CONCLUSION

The motions to dismiss (motions 1 and 2) are denied, the motion for summary judgment (motion 3) is denied, and the motions to quash service (motions 4 and 5) are denied.

So ordered.