COFFIN, Chief Judge.
Plaintiffs-appellees brought this action in 1975 in the federal district court for the district of Rhode Island on behalf of themselves and others similarly situated. Their complaint alleges that the defendants-ap *149 pellants[1] illegally interfered with their mail, thereby violating appellees’ rights under the First, Fourth, Fifth, and Ninth Amendments. The suit seeks damages and declaratory and injunctive relief. Subject matter jurisdiction was invoked under 28 U.S.C. §§ 1331(a), 1339, 1343, 1361, and 5 U.S.C. § 702.
Appellants are 25 present or former United States government officials, each sued in his individual and in his official or former official capacity. One of the named plaintiffs, Driver, lives in Rhode Island,[2] but none of the appellants reside in or have substantial contacts with Rhode Island, and the complaint does not allege that any illegal activity occurred in Rhode Island.[3] Therefore, venue is not proper under 28 U.S.C. § 1391(b), and, since none of the appellants were served within Rhode Island,[4] service of process was inappropriate under F.R.Civ.P. 4(f).
Appellees invoke 28 U.S.C. § 1391(e) to support venue and service of process:[5]
“A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.
“The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.”[6]
Appellants filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(2) (lack o:” jurisdiction over the person), 12(b)(3) (improper venue), and 12(b)(4) (insufficiency of process). The district court denied these motions, but certified that the questions involved controlling issues of law as to which there is substantial ground for difference of opinion and that an immediate appeal could materially advance the litigation. Driver v. Helms, 74 F.R.D. 382, 401-02 (D.R.I.1977). We thus have appellate jurisdiction under 28 U.S.C. § 1292(b).
Appellants argue that 28 U.S.C. § 1391(e), contrary to the holding of the district court, does not give venue to the district court in Rhode Island, does not give the court jurisdiction over the persons of the appellants, and does not authorize the service of process on these appellants. They argue that reliance on § 1391(e) is misplaced because that section does not apply to former officials, does not apply to suits against officials for damages in their individual capacities, and does not independently supply in personam jurisdiction.
THE FORMER OFFICIALS
Ordinarily the plain meaning of the language of a statute is controlling. See *150 Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp., 545 F.2d 754, 756 (1st Cir. 1976). Section 1391(e) applies, by its terms, when a “defendant is an officer or employee of the United States . . . acting in his official capacity or under color of legal authority . . . .” (emphasis added) Because the operative language is in the present tense, we read the section to exclude a defendant who was an officer or employee.
“Of course, deference to the plain meaning rule should not be unthinking or blind. We would go beyond the plain meaning of statutory language when adherence to it would produce an absurd result or ‘an unreasonable one “plainly at variance with the policy of the legislation as a whole.” ’ ” Massachusetts Financial Services, supra, 545 F.2d at 756, quoting United States v. American Trucking Ass’ns, Inc., 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), quoting Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922); cf. Natural Resources Defense Counsel v. TVA, 459 F.2d 255, 257 (2d Cir. 1972) (eschewing the “tyranny of literalness”).[7] We do not, however, find any indication in the statute itself or in the legislative history that former officials were meant to be included. We are not alone in this conclusion. See Kipperman v. McCone, 422 F.Supp. 860, 876 (N.D.Cal.1976); Wu v. Keeney, 384 F.Supp. 1161, 1168 (D.D.C.1974).
The cases that have reached a contrary result have decided that excluding former officials would undercut the policies of § 1391(e). See Driver v. Helms, supra,
74 F.R.D. at 398-400; United States v. McAninch, 435 F.Supp. 240, 245 (E.D.N.Y. 1977); Lowenstein v. Rooney, 401 F.Supp. 952, 962 (E.D.N.Y.1975). We do not think it absurd or plainly at variance with the policies of § 1391(e) to limit it to those who are government officials at the time the action is brought.[8] We are unimpressed by the specter of government officials resigning their positions simply because they fear an action might be brought against them. As the court below noted, resignation would not terminate their liability. See Driver v. Helms, supra, 74 F.R.D. at 399-400. The most an official could gain would be to avoid venue in the district where a plaintiff lives. A career in government service is, one would think, a disproportionate sacrifice to make for so small a gain. Moreover, we are not persuaded that Congress’ desire “to provide readily available, inexpensive judicial remedies for the citizen who is aggrieved by the workings of Government”, H.Rep. No. 536, 87th Cong., 1st Sess. 3 (1961) [hereinafter referred to as House Report], indicates that Congress meant § 1391(e) to provide a net that could draw everyone connected with a governmental action into litigation in a particular district. For instance, those who were never government officials but are defendants in a law suit clearly cannot be reached by § 1391(e).[9] In fact there is a clear indication in the legislative history that Congress did not mean to reach at least those former officials who have moved away from Washington.[10] Therefore, we reverse the district court as to this point and hold that *151 § 1391(e) does not apply to those defendants who, at the time this action was brought, were not serving the government in the capacity in which they performed the acts on which their alleged liability is based.[11]
PERSONAL DAMAGE ACTIONS
The next issue we must face is whether § 1391(e) applies to actions for damages against officials in their individual capacities. Section 1391(e) was passed, together with 28 U.S.C. § 1361, as the Mandamus and Venue Act of 1962. Before 1962 most actions against federal officials could not be brought outside the District of Columbia. Higher officials residing in Washington were usually indispensable parties against whom venue could not be secured except in Washington. Furthermore, such actions were often in the nature of mandamus, and federal district courts outside the District of Columbia lacked subject matter jurisdiction over mandamus actions. The crux of appellants’ argument is that § 1391(e) should be narrowly construed as a companion to § 1361, designed to combat the specific, relatively narrow problem that spurred Congress to act. That is, they would have us read § 1391(e) to do no more than supply venue in those suits made possible by § 1361, “[suits] in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.”
The Second Circuit has twice followed similar reasoning, but in cases distinguishable from ours. In Liberation News Service v. Eastland, 426 F.2d 1379 (2d Cir. 1970), the court said that § 1391(e) was aimed at the mischief posed by the inability to review government action outside Washington and that § 1391(e) reached only those who might be subject to compulsion under § 1361. The holding of the case, however, was that the section did not apply to legislators.[12] The court did not have occasion to decide the kinds of civil actions that could be brought against someone to whom § 1391(e) did apply. In Natural Resources Defense Council v. TVA, supra, 459 F.2d at 255, the court said that §§ 1391(e) and 1361 must be read together, id. at 258, and that the literal meaning should not necessarily control, id. at 257; but the holding was that § 1391(e)’s venue provisions did not apply to the TVA because another statute controlled venue for actions against the TVA. Id. at 259. Section 1391(e) states that it applies “except as otherwise provided by law.” The court went on to point out that a suit against the TVA could not have been brought in Washington before 1962. See House Report, supra, at 2.[13] In this case the action, at least as against current officials, could have been brought in Washington.
The weakness of the argument, even apart from the fact that it reflects no clear signal from the legislative history discussed below, is that we must interpret the United States Code as it is written. Congress did not limit the application of § 1391(e) to “[actions] in the nature of mandamus”. Rather Congress used the words “[a] civil action in which each defendant is an officer or employee of the United States . acting . . . under color of legal authority.” The statute does not, by its terms, limit the kind of civil action to which it applies. The case at bar is a civil action. The complaint alleges that the defendant officers of the United States were acting “under color of legal authority”. All elements fit — and we deal with a statute speaking in a highly technical field, venue *152 and jurisdiction, where, if anywhere, precision is required.
The plain language of § 1391(e) covers this case, but again we would go beyond the plain language if the result were absurd or plainly at variance with congressional policies. We conclude, after considering such questions, as have many other courts, that § 1391(e) should cover damage actions against officers in their individual capacities.[14] See Briggs v. Goodwin, 569 F.2d 1 (D.C.Cir. 1977); Ellingburg v. Connett, 457 F.2d 240, 241 (5th Cir. 1972); Driver v. Helms, supra; United States v. McAninch, supra; Lowenstein v. Rooney, supra; Pamore v. Carlson, 392 F.Supp. 737, 738 (E.D.Ill.1975); Wu v. Keeney, 384 F.Supp. 1161 (D.D.C.1974); Green v. Laird, 357 F.Supp. 227 (N.D.Ill.1973); Hart & Wechsler, The Federal Courts and the Federal System 1388 (1973); 2 Moore, Federal Practice 14.29, 1210 (1977). Cf. Kletschka v. Driver, 411 F.2d 436, 442 (2d Cir. 1969) (basing venue on § 1391(b) but adding that § 1391(e) “seems” to apply as well). But see Kenyatta v. Kelley, 430 F.Supp. 1328, 1330 (E.D.Pa.1977); Davis v. F.D.I.C., 369 F.Supp. 277 (D.Colo.1974); Paley v. Wolk, 262 F.Supp. 640 (N.D.Ill.1965).
The legislative history of § 1391(e) is at best ambiguous, but there are indications that the drafters of the legislation understood that the act might apply to actions such as this one and were not sufficiently bothered by that possibility to prevent it. This act originated as H.R. 10089, 86th Cong., 2d Sess: (I960).[15] That bill was limited to officers acting in their official capacity, and its author, Representative Budge, explained that it was intended to meet the narrow problem described above. Hearing Before the Committee on the Judiciary (Subcommittee No. 4), 86th Cong., 2d Sess. 2 — 4 (May 26 and June 2, 1960) [hereinafter cited as Hearings].[16] The hearings on the bill before a subcommittee of the Committee on the Judiciary demonstrate that at least some members of that subcommittee did not want the bill limited to a narrow purpose. For instance, at one point Mr. Drabkin, the subcommittee’s counsel, stated, “I think what this bill is concerned with doing is dealing with mandamus and also dealing with petitions for review which may not properly be brought now because of some venue defect.” Congressman Dowdy responded, however, “I asked to be sure it was not limited to that.” Id. at 32.
Later in the same hearing Mr. MacGui-neas, a representative from the Department of Justice, said he did not understand what the bill was trying to do. “In order to understand that we would have to know how this bill is intended to affect each particular type of suit that a citizen may want to bring against a Government official, and there are many different types.” Congressman Dowdy responded, “Maybe we want it to apply to all suits. There is not any particular one. We want it to apply to any one.” Congressman Whitener followed that up by saying, “I did not understand there was any doubt.” Id. at 53-54. One type of suit hypothesized by Mr. MacGui- *153 neas was a slander suit against a congressman.[17] Congressman Whitener indicated that he felt the bill should cover such a situation, Hearings, supra at 55, and he compared it to a postal worker slapping a housewife as he delivered mail. Id. at 58.
The desire to reach a variety of causes of action prompted the first mention of the “under color of legal authority” phrase. After a discussion whether certain kinds of acts would constitute official action or not, Mr. Drabkin proposed, “Suppose in order to take care of a body of law which seems to say that when a government official does something wrong he is acting in his individual capacity, we added the following language — ‘acting in his official capacity or under color of legal authority.’ That would not bring in the type of situation in which a postman, after he had gone home for the night, proceeded to run over somebody’s child.” Id. at 61-62. This is the first appearance of the “under color” language, and its context suggests that it was understood to exclude only those personal damage actions arising from purely private wrongs.
The Department of Justice expressed reservations about the utility of H.R. 10089 because it was limited to “official actions”, and did not expand subject matter jurisdiction. Most actions against government officials, such as those seeking personal damages for acts in excess of official authority, would not be covered by a bill limited to “official capacity”. Actions that would be “official”, would be equivalent to mandamus actions, and so would still be confined to the District of Columbia for lack of subject matter jurisdiction elsewhere. See Briggs v. Goodwin, supra, 569 F.2d at 4. The new bill, H.R. 12622, 86th Cong., 2d Sess. (1960) met these objections. Section 1 of the bill added a new section, now codified as 28 U.S.C. § 1361, extending mandamus jurisdiction to all district courts.[18] In section 2 of the bill, § 1391(e), Congress included, inter alia, the phrase “under color of legal authority”. See Briggs v. Goodwin, supra, 569 F.2d at 4-5.
This bill was reintroduced in the next Congress as H.R. 1960, 87th Cong., 1st Sess. (1961). The Department of Justice, in a letter from then Assistant Attorney General Byron White suggested more changes. The letter recognized that section 2 of the bill, the new § 1391(e) “covers an entirely different subject” than section 1, the new 28 U.S.C. § 1361, and that unless clarified § 1391(e) might apply to “suits for money judgments against officers.” S.Rep. No. 1992, 87th Cong., 2d Sess. (1962), 1962 U.S. Code Cong. & Admin.News, pp. 2784, 2879 [hereinafter cited as Senate Report].[19] Though acting on other suggestions from that letter,[20] Congress did nothing to eliminate personal damage actions. In fact, both the House and Senate reports state, “The venue problem also arises in an action *154 against a Government official seeking damages from him for actions which are claimed to be without legal authority but which were taken by the official in the course of performing his duty." House Report, supra,- at 3; Senate Report, supra, 1962 U.S.Code Cong. & Admin.News at 2786 (emphasis added).[21]
In the face of all of this, appellants argue that § 1391(e) was meant to do no more than provide venue in cases to which § 1361 applies, actions in the nature of mandamus brought outside the District of Columbia. In support of this argument they point to language in the legislative history that “[t]he purpose of this bill is to make it possible to bring actions against Government officials and agencies in U.S. district courts outside the District of Columbia, which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the U.S. District Court for the District of Columbia.” House Report, supra, at 1. Appellants also point to the following paragraph of the Report:
“By including the officer or employee, both in his official capacity and acting under color of legal authority, the committee intends to make the proposed section 1391(e) applicable not only to those cases where an action may be brought against an officer or employee in his official capacity. It intends to include also those cases where the action is nominally brought against the officer in his individual capacity even though he was acting within the apparent scope of his authority and not as a private citizen. Such actions are also in essence against the United States but are brought against the officer or employee as individual only to circumvent what remains of the doctrine of sovereign immunity. The considerations of policy which demand that an action against an official may be brought locally rather than in the District of Columbia require similar venue provisions where the action is based upon the fiction that the officer is acting as an individual. There is no intention, however, to alter the venue requirements of Federal law insofar as suits resulting from the official’s private actions are concerned.” Id. at 3-4 (emphasis as supplied by appellants).
We do not think that these passages clearly exclude the result that we have reached. Even if we were to acknowledge that the primary purpose of § 1391(e) was to expand venue in mandamus cases, that would not preclude it from serving other purposes as well. That it does do so and was intended to do so is indicated by the legislative history described above.
Further, unless one were prepared to argue that the 1976 amendment was a mistake, we think it must be taken as a further indication that Congress, whatever its intent at the time it passed § 1391(e), now understands the section to reach personal damage actions. The amendment, note 6, supra, allows defendants who are not government officers to be joined in an action with officers when venue as to the officers is asserted under § 1391(e). It would make little sense to join someone who is not an officer if the suit were limited to an action in the nature of mandamus. Therefore, the suit Congress was contemplating must be aimed at acts that can give rise to liability for private remedies.
We affirm the district court’s holding that § 1391(e) applies to personal damage actions.
PERSONAL JURISDICTION
Appellants’ final argument is that § 1391(e)’s service of process provision facilitates the broadened venue provisions, but only if the district in which the suit is brought can establish personal jurisdiction by some other mechanism. In the alternative they argue that even if § 1391(e) broadens personal jurisdiction, it would be unconstitutional to apply it to individuals who lacked the minimum contacts with the *155 state in which the court sits that are required by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.
Appellants state their argument as follows:
“Nothing in Section 1391 speaks to personal jurisdiction. The statute is entitled ‘venue generally’ and sets forth in its various sections the rules of venue in civil actions. The statute specifically authorizes only a method of service of process, as distinct from a grant of in personam jurisdiction, for the federal officers or agencies within its purview. Indeed, the service of process provision in the statute emphasizes the focus of the statute on review of agency actions and present officials since service is to be made ‘to the officer or agency.’ The statute addresses only the mechanics of service of process and does not address the exercise of personal jurisdiction. Obviously, it is one thing for an individual to be served the process extraterritorily [sic], but quite another for that individual to be subject to the personal jurisdiction of a court in compliance with the Constitutional requirements of due process.”[22]
It is true that jurisdiction over the person and service of process are distinguishable, but they are closely related.[23] “[S]erviee of process is the vehicle by which the court may obtain jurisdiction.” Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400, 402 (1st Cir. 1965). If Congress, by § 1391(e), authorized service of process beyond the geographical limits that F.R.Civ.P. 4(f) would otherwise impose, and if such service does not violate the Constitution, then service was properly made in this ease, and the court properly acquired jurisdiction over the persons of the appellants.
Because appellants are being sued in their individual capacities, they must be served as required by F.R.Civ.P. 4(d)(1), rather than 4(d)(4) or 4(d)(5). That is, a copy of the summons and complaint must be personally delivered. Rule 4(f), however, limits service of process to the territory of the state in which the court is sitting. But Rule 4(f) permits statutory exceptions, and Congress has, in some cases, authorized service of process beyond state boundaries. See Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925); 4 Wright & Miller, Federal Practice and Procedure, § 1125 (1969); Hart & Wechsler, supra, at 1106-07. The first question is whether Congress did so in this case.
The second paragraph of §. 1391(e) provides that “[t]he summons and complaint . . . shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.” Clearly this provision does more than describe the mechanics of service of process. It creates an exception to the general rule by allowing service of process anywhere in the United States by certified mail.
Not only does our reading of the statute command such an interpretation, but we are persuaded that this is precisely what Congress intended. Judge Maris, testifying before the subcommittee as a representative of the Judicial Conference, pointed out that the original bill, H.R. 10089, created a *156 “problem about the acquisition of jurisdiction in personam by the Court in the venue” created by the bill. Hearings, supra, at 87. The bill relied on the Federal Rules of Civil Procedure to provide service of process, but Rule 4 would not permit service of process on the individual involved in the suit if that individual were outside the state in which the suit was brought. Judge Maris suggested that the statute provide for broader service:
“There are statutes which do, like the Antitrust Laws, the Sherman Antitrust Act, under which you can bring a suit against defendants and serve them anywhere in the United States, and of course under the Bankruptcy Act you can serve persons anywhere in the United States.
“Now what you would have to do here it seems to me would be to provide for the service that we discussed, namely, service upon the U.S. Attorney, service by mail upon the Attorney General, and also service by mail anywhere in the United States upon the officer or agent being sued.
“That would take care of it because all that is necessary is for Congress to authorize service to be made outside of the District, and it is perfectly valid to do so.” Hearings at 88-89.
Congress, following Judge Maris’ suggestion, provided nationwide service of process by mail and expected that broadening service would correspondingly broaden personal jurisdiction. Congress recognized that it would serve no purpose to broaden venue without also broadening service of process. House Report, supra, at 4. See Briggs v. Goodwin, supra, 569 F.2d at 7-8. Thus, to the same extent that § 1391(e) supplies venue, it supplies the mechanism to secure personal jurisdiction.[24]
Having concluded that Congress did create nationwide service of process, we must next decide whether § 1391(e), so interpreted, is constitutional. Appellants argue, and we will assume, that they lack “minimum contacts” with the State of Rhode Island. The minimum contacts test was developed in cases testing the limits of a state’s jurisdiction over those not found within its boundaries. The circumscription of state court jurisdiction is a product of boundaries to states’ sovereignty.[25] The United States, however, whose court is here asserting jurisdiction, does not lose its sovereignty when a state’s border is crossed. The Constitution does not require the federal districts to follow state boundaries. That decision was made by Congress, and Congress could change its mind. Whether or not Congress *157 could go so far as to establish only one national district court, see Briggs v. Goodwin, supra, 569 F.2d at 9, it is clear that Congress could greatly reduce the number of federal districts and draw their boundaries without regard to state boundaries. See id., at 8-10.
Appellants next argue, with some force, that it would be very unfair and would violate due process to force them, as individuals, to answer suits in districts with which they have no connection and, further, that answering such suits places a burden upon them greater than that carried by a private litigant who would not have to travel to a far-away court — a court which might be far removed from the place where the cause of action arose, and which might have been chosen because the plaintiffs felt the judge would be friendly to their claims. We acknowledge that these appellants may have to answer complaints in a broader range of judicial districts than would nongovernmental defendants. But they are not without protection. A district court has broad discretionary power “[f]or the convenience of parties and witnesses, in the interest of justice, [to] . . . transfer any civil action to any other district . where it might have been brought.” 28 U.S.C. § 1404(a). We would expect courts to be sympathetic to motions for change of venue when defendants would otherwise be substantially prejudiced and when there is an alternative venue that would protect the parties’ rights. Furthermore, we note that officers of the federal government are different from private defendants because they can anticipate that their official acts may affect people in every part of the United States.
Congress is, of course, limited in the actions it can take by the Due Process Clause of the Fifth Amendment, but application of the Clause is not related to state boundaries. Rather, the requirement is that the nationwide “service authorized by statute must be reasonably calculated to inform the defendant of the pendency of the proceedings in order that he may take advantage of the opportunity to be heard in his defense.” Mariash v. Morrill, 496 F.2d 1138, 1143 (2d Cir. 1974). Certainly the certified mail requirement in § 1391(e) meets that standard. Such service is not extraterritorial for a court of the United States; therefore, the minimum contacts analysis is not relevant. We conclude that national service of process as provided by § 1391(e) is constitutional.[26] Briggs v. Goodwin, supra, 569 F.2d at 8-10; United States v. McAninch, supra, 435 F.Supp. at 244; Driver v. Helms, supra, 74 F.R.D. at 391.

Affirmed in part, reversed in part, and remanded.

. Other defendants in the case below are not parties to this appeal.

. The other named plaintiffs are residents of New York, Minnesota, Connecticut, and California.

. The illegal interference with appellees’ first-class mail is alleged to have occurred in New York City.

. The appellants each were served by certified mail outside Rhode Island.

. Appellees also suggested that Rhode Island’s long arm statute supplied jurisdiction. R.I. Gen.Laws § 9-5-33 (1956). See Driver v. Helms, 74 F.R.D. 382, 400 n. 23 (D.R.I.1977). This issue is not presented by this appeal.

. 28 U.S.C. § 1391(e) was amended in 1976. The word “each” was changed to “a” in the first sentence, and the following sentence was added to the end of the first paragraph:
“Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.”
P.L. 94-574, § 3, 90 Stat. 2721 (Oct. 21, 1976).

. “[W]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no ‘rule of law’ which forbids its use, however clear the words may appear on ‘superficial examination.’ ” United States v. Culbert,-U.S.-,-, 98 S.Ct. 1112, 1114, n. 4, 55 L.Ed.2d 349 (1978), quoting United States v. American Trucking Ass’ns, Inc., 310 U.S. 534, 543-44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

. We do not focus on a later time, such as the time when a hearing is held or a decision issued, because the statute speaks to the ability to bring an action. Moreover, if a court were not able to determine venue at the time an action is brought, judicial processes could be thrown into chaos by mobile litigants.

. That such defendants may exist is indicated by the 1976 amendment. See note 6, supra.

. “This bill is not intended to give access to the Federal courts to an action which cannot now be brought against a Federal official in the U.S. District Court for the District of Columbia.” H.Rep. No. 536, 87th Cong., 1st Sess. 2 (1961). Prior to 1962 (when the bill was passed) former officials who had moved away from Washington would not have been subject to suit in Washington.

. The act is directed at officials “acting . under color of legal authority”. Since official acts expose the officer to expanded venue, and since we have concluded that this exposure terminates when the official leaves office, it would be anomalous to hold that one of the appellants serving the government in a different capacity is nonetheless still exposed to .national venue and service of process. As to the act or omission that exposed him to liability, it is only fortuitous that he is still in government. We need not now decide whether someone who has been promoted in the same department is likewise exempted from the operation of § 1391(e).

. We do not indicate our views on this holding. See note 17, infra.

. See note 10, supra.

. The Supreme Court has said that § 1391(e) does not apply to habeas corpus actions, Schlanger v. Seamans, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 998, 28 L.Ed.2d 251 (1971), but that decision turned on the special nature of habeas corpus actions which though “technically ‘civil,’ . . . [are] not automatically subject to all the rules governing ordinary civil actions.” See also the cases cited by the court below. 74 F.R.D. at 391-92.
We might have viewed Relf v. Gasch, 167 U.S.App.D.C. 238, 511 F.2d 804 (1975), as contrary authority, but in Briggs v. Goodwin, supra, 569 F.2d at 6-7, the same circuit confined Reif’s holding to situations where the alleged wrong was not connected with the defendant’s government service.

. H.R. 10089 read, in pertinent part:
“A civil action in which each defendant is an officer of the United States in his official capacity, a person acting under him, or an agency of the United States, may be brought in any judicial district where a plaintiff in the action resides.”

. The unpublished transcripts of these hearings were submitted to us by appellants, and appellees have not disputed their authenticity. We have verified the authenticity, accuracy, and availability of these transcripts through the office of the General Counsel to the House of Representatives’ Committee on the Judiciary.

. The Second Circuit has held that § 1391(e) does not apply to legislators, but the holding was based in part on not finding any “word in the five year gestation period of § 1391(e) to suggest that Congress thought it was changing the law not merely with respect to the executive branch but also concerning itself, its officers and its employees.” Liberation News Service v. Eastland, 426 F.2d 1379, 1384 (2d Cir. 1970). This issue is not presented to us, and we do not decide it.

. 28 U.S.C. § 1361 reads: '
“The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.”

. At minimum this letter demonstrates that Congress was on notice that personal damage actions against government officials were possible, contrary to appellants’ argument that due to broad immunity under the doctrine of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and because Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), was not yet decided, Congress would not have been thinking of such actions.

. For example, the letter suggested that the mandamus jurisdiction section should be limited to actions to compel a duty “owed the plaintiff’. The Senate by amendment adopted this provision, and the House accepted the amendment. See note 17, supra. See generally Briggs v. Goodwin, 569 F.2d 1, 5 n. 39 (D.C.Cir. 1977).

. This passage undermines appellants’ argument that the only damage actions Congress contemplated were actions in the nature of mandamus against an official to recover money allegedly owed to the plaintiff by the United States.

. The facts that § 1391(e) was part of “The Mandamus and Venue Act” and that it is codified in a chapter labelled “District Courts; Venue” are factors to consider in determining whether the statute can be used as a basis of personal jurisdiction. They do not overcome, however, the plain language of the statute, which read in the light of the legislative history, see United States v. Culbert, supra, note 7, as set out in the text, indicates that the statute confers personal jurisdiction as well as venue. Moreover, there is not an obviously more appropriate chapter of the code. The chapter entitled “District Courts; Jurisdiction” deals exclusively with subject matter jurisdiction.

. The distinction is most important, as an issue of federal practice, in diversity cases. A state long arm statute might authorize extraterritorial service of process that would reach a defendant over whom the state could not constitutionally exercise personal jurisdiction.

. See Briggs v. Goodwin, supra, 569 F.2d at 8; Liberation News Service v. Eastland, 426 F.2d 1379, 1382 (2d Cir. 1970) (dictum); United States v. McAninch, 435 F.Supp. 240, 244 (E.D. N.Y.1977); Driver v. Helms, 74 F.R.D. 382, 389 (D.R.I.1977); Lowenstein v. Rooney, 401 F.Supp. 952 (E.D.N.Y.1975); Crowley v. United States, 388 F.Supp. 981, 987 (E.D.Wis. 1975); Environmental Defense Fund, Inc. v. Froehlke, 348 F.Supp. 338, 364 (W.D.Mo.1972), aff’d, 477 F.2d 1033 (8th Cir. 1973); English v. Town of Huntington, 335 F.Supp. 1369, 1373 (E.D.N.Y. 1970); Macias v. Finch, 324 F.Supp. 1252, 1255 (N.D.Cal.1970); Brotherhood of Locomotive Engineers v. Denver & Rio Grande Western R. R. Co., 290 F.Supp. 612 (D.Colo.1968), aff’d, 411 F.2d 1115 (10th Cir. 1969). Cf. Ashe v. McNamara, 355 F.2d 277, 279 (1st Cir. 1965).

. This remains true even after International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A state boundary is still a significant jurisdictional demarcation because if a defendant is found and served within the state, minimum contacts need not be established, and jurisdiction may be asserted on the basis of the state’s sovereignty. We see no reason why the United States does not have the same power over defendants found within its borders. Even if we were to say that minimum contacts had to be established, anyone found and served within the United States would have sufficient contacts with the United States. See United States v. McAninch, 435 F.Supp. 240, 244 (E.D. N.Y.1977).
Appellants argue that the two Supreme Court cases cited above demonstrate that the Court has banished sovereignty as a factor in determining jurisdiction, substituting a test based on “[f]air play and substantial justice [which] are in the main functions of distance.” We can think of no case that has made distance a factor in determining minimum contacts. The test to determine whether a defendant may be brought before a state’s courts, say the courts of Rhode Island, is no different whether that defendant is found in Connecticut or in Hawaii.

. The Supreme Court has apparently not decided this precise issue since International Shoe. In one case the Court decided not to address the issue. United States v. Scophony Corp., 333 U.S. 795, 840 n. 13, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).