787 F.2d 828
 4 Fed.R.Serv.3d 965
 Barbara HANDSCHU, Ralph Digia, Alex McKeiver, Shaba Om,
Curtis M. Powell, Abbie Hoffman, Mark A. Segal, Michael
Zumoff, Kenneth Thomas, Robert Rusch, Annette T. Rubinstein,
Mickey Sheridan, Joe Sucher, Steven Fischler, Howard Blatt,
Ellie Benzone, on behalf of themselves and all others
similarly situated, Plaintiffs-Appellees,
v.
SPECIAL SERVICES DIVISION a/k/a Bureau of Special Services,
William H.T. Smith, Arthur Grubert, Michael Willis, William
Knapp, Patrick Murphy, Police Department of the City of New
York, John V. Lindsay, and various unknown employees of the
Police Department acting as undercover operators and
informers, Defendants-Appellees,
v.
COMMUNIST PARTY, USA, Communist Party, New York State,
Richard Dhoruba Moore, Black Economic Survival, Robert
Bloom, Mark Gombiner, Puerto Rican Socialist Party, David
Lerner, Workers World, Jean Toche, Eduardo Cruz, Bill of
Rights Foundation, Bruce Anspach, Paul Avrich, Jane
Benedict, Comite Chileno Anti- Fascista, John Cammett,
Sheila S. Collins, Paul Cowan, Emile D'Antonio, Ralph Digia,
Kathy Engel, Robert Engler, William Epton, Robert H. Fink,
Miriam Friedlander, Marvin R. Gettleman, Mark Gildav, Alan
Ginsberg, Peter Orlovsky, Alan Charney, Edward Greer in
Behalf of Gilbert Green, Nora Bredes, Selig L. Harris, Karla
Jay, Harold S. Kleinman, Robert Lefcourt, Sandra Levinson,
Henry Magdoff, Ruth W. Messinger, David Metzger, Barton
Meyers, Mobilization For Survival, Jerrold Nadler, North
American Conference on Latin America, Bertell Ollman, Grace
Paley, Steven Fischler, Joel Sucher, Paul Robeson, Jr., John
S. Rosenberg, Arthur H. Samuelson, Walter Schneir, Miriam
Schneir, Dennis Sherman, John J. Simon, Natalie J. Sokoloff,
Samuel M. Sweeney, Sylvia Hall Thompson, Geoffrey S.
Smith, Tower News Service, Basil Wilson, Win Magazine, John
M. Miller, Howard Zinn, Committee For Suit Against
Government Misconduct, International Indian Treaty Council,
New York State Citizens Party, New York Theological
Seminary, Pen American Center, Morton Sobell, Helen L.
Sobell, Coalition For Peoples Alternative, Youth
International Party, Richard Goldenson, William Appleman
Williams, Sigmond Diamond, Richard Falk, Robert M. Fass,
George W. Webber, Lambda Legal Defense & Education Fund,
Inc., Freedom To Write Committee of Pen American Center,
Annette Rubinstein, Charles Rivers, Lucius Walker, Michael
Rubin, National Conference of Black Lawyers, Charlene
Mitchell, United States Peace Council, Labor Research
Associates, National Alliance Against Racist and Political
Repression, and National Emergency Civil Liberties
Committee, and National Lawyers Guild, Objectors-Appellants.
 Nos. 502 through 508, Dockets 85-7480, 85-7486, 85-7488,
85-7496, 85-7498, 85- 7500 and 85-7502.
 United States Court of Appeals, Second Circuit.
 Argued Nov. 18, 1985.
Decided April 9, 1986.
 
 John Abt and Jeffrey Schwartz, New York City, for objector-appellant Communist Party USA and Communist Party NYS.
 Paul G. Chevigny, Martin R. Stolar (Stolar, Alterman & Boop), Jethro M. Eisenstein (Friedman and Eisenstein) and Franklin Siegel, New York City, of counsel), for plaintiffs-appellees.
 Dana Robbins, New York City (Frederick A.O. Schwartz, Jr., Corp. Counsel, and Larry A. Sonnenshein, New York City, of counsel), for defendants-appellees.
 Marshall Perlin, New York City for objectors-appellants Bruce Anspach, et al.
 Michael Krinsky, New York City (Rabinowitz, Boudin, Standard, Krinsky & Lieberman and Victor Rabinowitz, New York City, on the brief), for objector-appellant Nat. Emergency Civil Liberties Committee.
 Robert J. Boyle, Brooklyn, N.Y. for objector-appellant Richard Dhoruba Moore.
 Michael Ratner, Marjorie Ratner and Anne E. Simon, New York City, for objector-appellant Center for Constitutional Rights.
 Rabinowitz, Boudin, Standard, Krinsky & Lieberman and Michael Krinsky, New York City, on brief, for objector-appellant Nat. Lawyers Guild.
 Rabinowitz, Boudin, Standard, Krinsky & Lieberman, and Betty St. Clair, New York City, on brief, for objector-appellant Bill of Rights Foundation, Inc.
 Before VAN GRAAFEILAND, NEWMAN and MINER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Objector-appellants (appellants) are members of a class who seek to overturn an order of the United States District Court for the Southern District of New York (Haight, J.) approving the settlement of a class action which charged the New York City Police Department's Public Security Section, formerly known as the Special Services Division, with violations of appellants' constitutional rights. The district court's Memorandum Opinion and Order is reported in 605 F.Supp. at 1384. Finding no error in the granting of the Order, we affirm.
 
 
 2
 The original complaint in this action was filed in 1971 by individual plaintiffs alleging on behalf of themselves and others that the Special Services Division unlawfully conducted surveillance and other investigatory activities against them and the political action groups to which they belonged. See 349 F.Supp. 766, 768-70 (S.D.N.Y.1971). For the next eight years, the parties engaged in discovery focused primarily on the issue of class certification. In 1979, a broad plaintiff class was certified under Fed.R.Civ.P. 23(a), (b)(1)(A), and (b)(2). See 605 F.Supp. at 1388.
 
 
 3
 By December 1980, the parties had negotiated a proposed settlement which they submitted to the district court for approval. The agreement, see 605 F.Supp. 1417-24, is in two parts, the first being a stipulation of settlement which provides for discontinuance of the class action with prejudice upon defendants' adoption of specified Guidelines, and the second being the Guidelines themselves.
 
 
 4
 In substance, the Guidelines provide that the NYPD public security intelligence-gathering entity will operate in conformance with constitutional guarantees; that future intelligence gathering focused on political activity will be conducted as agreed in the Guidelines, and that a three-member "Authority" will be established to oversee the activities of the intelligence-gathering unit. The Guidelines permit the Public Security Section to make inquiries concerning a planned political event only so far as is necessary to preserve peace and to assign personnel for crowd control and the orderly conduct of the gathering. In conducting an inquiry, police investigators must identify themselves to the event sponsors. Unless an approved investigation is being conducted, information concerning such events may be retained only for the aforesaid logistical purposes.
 
 
 5
 To initiate an investigation, the Public Security Section must submit an Investigation Statement to the Authority specifying the factual basis for the proposed undertaking. The investigation may proceed without Authority approval for thirty days after such a statement has been filed. After thirty days, the Section must obtain written Authority approval to continue the investigation; the Authority may approve continuation of the investigation for sixty days or may disapprove it.
 
 
 6
 Authority approval also is required for the use of undercover agents for intelligence gathering. The Authority may grant approval for the use of undercover agents for thirty days, with sixty-day extensions if warranted. If exigent circumstances exist, the request for approval, detailing such circumstances, may be delayed for up to 48 hours. Authority approval is not to be considered a substitute for judicial approval otherwise required by law.
 
 
 7
 Any persons or organizations who have reason to believe that they are named in the Public Security Section files may request that the Authority conduct an inquiry to determine whether this is so, and, if it is, to determine whether the pertinent investigation was conducted in accordance with the Guidelines. The Authority may determine what disposition is to be made of improperly acquired information and must report instances of nonconforming investigations to the police commissioner, "who shall initiate disciplinary measures."
 
 
 8
 A public security intelligence file may not be maintained on an individual solely because of his political, religious, sexual, or economic preference. Moreover, unless written authorization from the Authority has been obtained, a file may not contain information that an individual has signed a political petition, or appears on a mailing list, or has contributed to a political group or has disseminated political or religious writings.
 
 
 9
 The Guidelines specify how intelligence information gathered by the Public Security Section may be disseminated. Requests for information must be screened, and release of information is limited to law enforcement agencies and government security clearance investigations. Records of disclosure must be kept, and, if inaccurate information is found to have been disclosed, all recipients of that information must be so notified.
 
 
 10
 The settlement agreement also prescribes preservation and access requirements for the public security intelligence files. Files created before 1955 may be destroyed. Files dating from 1955 to 1960 must be retained for six months after entry of the stipulation, and files dating from 1960 to the entry date must be retained for one year thereafter. Members of the plaintiff class may inspect and copy files during the retention periods, subject to verification of their connection with the organization involved or their membership in the plaintiff class. The Public Security Section may deny access to the file when the file "relates to a current investigation or when information was collected in the course of an investigation based on specific information that the subject engaged in, was about to engage in, or threatened to engage in conduct constituting a crime or when the disclosure of the file would endanger the life or safety of any person." Denial of access may be appealed to the Authority.
 
 
 11
 The stipulation provides that plaintiffs will notify defendants of any claimed violation of the Guidelines in order that the defendants may have an opportunity to cure violations before contempt proceedings are initiated against them. Finally, the stipulation provides that it "constitutes a full and final adjudication with respect to the claims of the plaintiff class for injunctive and declaratory relief as stated in the complaint" and that "[a]ny claim based solely upon the collection and/or retention of information about a person or an organization by the New York City Police Department is also settled by this stipulation."
 
 
 12
 Appellants contend initially that notice of the proposed settlement was inadequate, both in content and in visibility. We disagree. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), and must express no opinion on the merits of the settlement, In re Traffic Executive Association-Eastern Railroads, 627 F.2d 631, 634 (2d Cir.1980). Subject to these requirements, however, the district court has virtually complete discretion as to the manner of giving notice to class members. See Fed.R.Civ.P. 23(e); 7A C. Wright & A. Miller Sec. 1797 at 237. The notice need not include the entire text of the proposed settlement but may describe it in general terms. Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); Grunin v. International House of Pancakes, 513 F.2d 114, 122 (8th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). The notice which the district court approved was sufficient to alert class members to the pendency of the settlement and to preserve their options in connection therewith. See Weinberger v. Kendrick, supra, 698 F.2d at 70-71.
 
 
 13
 Likewise, the method chosen to disseminate the notice--publication over a period of weeks in several metropolitan New York newspapers--adequately served to notify class members that a potential compromise had been reached. Because of the common interests of all its members, a Rule 23(b)(2) class seeking declaratory and injunctive relief is cohesive by nature, see 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1786 at 142-43, and notice to a representative class membership may be considered sufficient. See Hansberry v. Lee, 311 U.S. 32, 43, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 963 (3d Cir.1983). Where, as here, the notice of settlement prompts widespread reaction from class members, it would appear that the notice has served its due process purpose. See Walsh v. Great Atlantic & Pacific Tea Co., supra, 726 F.2d at 963.
 
 
 14
 Appellants next contest the district court's determination that the settlement agreement was fair and reasonable, a determination that may be reversed only for an abuse of discretion. The trial judge knows the litigants and the strengths and weaknesses of their contentions and is in the best position to evaluate whether the settlement constitutes a reasonable compromise. TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 463 (2d Cir.1982); In re Traffic Executive Association-Eastern Railroads, supra, 627 F.2d at 633-34. The district court must, of course, ensure that the settlement is fair and not a product of collusion, and that class members' interests were represented adequately. Plummer v. Chemical Bank, 668 F.2d 654, 658 (2d Cir.1982). If the court then approves a settlement based upon well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, see City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.1974), the settlement should be upheld on review. Plummer v. Chemical Bank, supra, 668 F.2d at 659.
 
 
 15
 Nothing in appellants' arguments persuades us that the district court erred in approving the settlement. The district court compared "the terms of the compromise with the likely rewards of litigation", see Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163-64, 20 L.Ed.2d 1 (1968), and concluded that the proposed settlement was a fair resolution of the parties' differences. This conclusion was based in part upon the district court's determination that limitations on its equity power and important principles of federalism would not permit it to grant much of the injunctive relief that plaintiffs sought. See, e.g., Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate, 519 F.2d 1335 (3d Cir.1975); Socialist Workers Party v. Attorney General, 510 F.2d 253 (2d Cir.1974); Fifth Avenue Peace Parade Committee v. Gray, 480 F.2d 326 (2d Cir.1973), cert. denied, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974). As a result of the compromise, therefore, plaintiffs-appellees obtained, not merely reasonable, but very respectable, concessions with respect to the New York City Police Department's "latitude in the dispatch of its ... affairs." See Rizzo v. Goode, supra, 423 U.S. at 379, 96 S.Ct. at 608.
 
 
 16
 Appellants argue, nonetheless, that the record upon which the district court based its approval did not constitute an adequate factual inquiry into the merits of their claim, because the discovery, although extensive, was directed primarily toward the issue of class certification. However, the record contains a quantity of information which the district court was able to use in evaluating the proposed compromise. This included affidavits from police officials concerning political surveillance and intelligence gathering activities, police departmental guidelines for these operations, pertinent academic commentaries, and decisions in state litigation involving similar issues. The district court correctly concluded that it would be inconsistent with the salutary purposes of settlement to conduct a full trial in order to avoid one. 605 F.Supp. at 1398; see Weinberger v. Kendrick, supra, 698 F.2d at 74.
 
 
 17
 We find no merit in appellants' contentions that the settlement must be rejected because its provisions limiting access to the New York City Police Department's intelligence files violate New York's Freedom of Information Law, N.Y.Pub.Off.Law Secs. 84-90. The district court correctly noted that the New York statute deals with access to, rather than preservation of, public documents. 605 F.Supp. at 1413. Moreover, such limitation of public access as the district court approved is temporary, a maximum of one year, and seems the essence of a reasonable compromise of the parties' wishes.
 
 
 18
 Appellant Richard Moore requests that he be allowed to opt out of the class because of the possible res judicata effect of the settlement upon his pending separate action for damages. Other appellants echo Moore's contentions that the inclusion in the settlement of claims "based solely upon the collection and/or retention of information about a person or organization by the New York City Police Department" improperly waives or limits their right to sue for damages. However, as interpreted by both the settling parties and the district court, this clause was not intended to include claims based upon illegal methods of collection, but is limited to conduct which is permissible in any event under the Supreme Court's holding in Laird v. Tatum, supra, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154. Under the circumstances, we see little prejudice to any class members from their inability to opt out of the class.
 
 
 19
 We have considered appellants' remaining contentions, and see no need to enlarge further upon the district court's comprehensive and well-reasoned opinion. The order appealed from is affirmed.