67 F.3d 1072
 Fed. Sec. L. Rep. P 98,910, 32 Fed.R.Serv.3d 1051
 Mary Ann MAYWALT, Mary White, John Vosefski and J. Richard
Aboud DDS, Inc. Defined Benefit Pension Plan, on
behalf of themselves and all others
similarly situated,
Plaintiffs-Appellants,
Vivienne Galligan, Plaintiff,
Plaintiff Class, Plaintiff-Appellee,
v.
PARKER & PARSLEY PETROLEUM COMPANY, Barrie M. Damson,
William T. Ouzts, Robert F. Carr, III, J. William Pierce,
Robert S. Rose, Jerol M. Sonosky, Garth M. Ramsay, Scott D.
Sheffield, Herbert C. Williamson, Timothy M. Dunn, James D.
Moring, Robert J. Castor and Frank A. Kubica, Defendants-Appellees,
Smith Barney, Harris Upham & Co. Inc., Defendant.
 No. 1740, Docket 94-9234.
 United States Court of Appeals,
Second Circuit.
 Argued June 19, 1995.
Decided Oct. 13, 1995.
 
 William C. House, New York City (Warren F. Young, Young & Bearden, Tulsa, OK, on the brief), for Plaintiffs-Appellants.
 Richard J. Kilsheimer, New York City (David R. Markham, Michael A. LaBazzo, Sullivan, Hill, Lewin & Markham, San Diego, CA, Robert N. Kaplan, Kaplan, Kilsheimer & Fox, New York City, Stephen D. Oestreich, Roy L. Jacobs, Wolf Popper Ross Wolf & Jones, New York City, Donald R. Bradford, John R. Decker, Bradford & Decker, Tulsa, OK, on the brief), for Plaintiff-Appellee Class.
 Lewis T. LeClair, Dallas, TX (Lori A. Leu, Dallas, TX, Melvin A. Brosterman, Stroock & Stroock & Lavan, New York City, Michael P. Lynn, Lynn, Stodghill & Melsheimer, Dallas, TX, Eugene Hanson, O'Melveny & Myers, New York City, on the brief), for Defendants-Appellees.
 Before: KEARSE, ALTIMARI, and PARKER, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Mary Ann Maywalt et al., who are four of the five plaintiff class representatives in this securities class action, appeal from a final judgment of the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, approving the settlement of the litigation. Appellants principally challenge interlocutory orders of the district court (1) denying their request for the appointment of new class counsel, and (2) refusing to order an additional notice to the class stating that appellants opposed the proposed settlement. For the reasons below, we reject their challenges and affirm the judgment.
 
 I. BACKGROUND
 
 2
 Plaintiffs were limited partners in a number of oil and gas limited partnerships in which Damson Oil Corporation ("DOC") was the general partner (the "Damson Limited Partnerships" or "DLP"). In June 1990, DOC entered into an agreement to merge the Damson Limited Partnerships with Parker & Parsley Development Partners, L.P. (the "Parker & Parsley Partnerships"), to create defendant Parker & Parsley Petroleum Company ("P & P Petroleum") (the "merger transaction"). Under this agreement, each DLP limited partner was to receive P & P Petroleum stock and a cash distribution.
 
 
 3
 The merger agreement was subject to the approval of the DLP limited partners. To secure proxies, a prospectus/proxy statement dated December 31, 1990 (the "original prospectus"), was sent to the DLP limited partners for a special meeting. Two supplemental prospectuses were sent thereafter. The meeting was held on February 19, 1991, and the agreement was approved. In June 1991, DOC filed a petition in bankruptcy.
 
 
 4
 In February 1992, appellants and a fifth named plaintiff commenced the present action (the "Maywalt action") against, inter alios, P & P Petroleum, several of its officers and directors, and several officers and directors of DOC. Suing on behalf of themselves and other investors who held interests in one or more of the Damson Limited Partnerships around the time for consideration of the merger proposal, the Maywalt plaintiffs asserted claims for fraud under federal securities laws and for various violations of their rights under state law. They alleged that the original prospectus misrepresented the asset values of the partnerships, that the supplemental prospectuses were not mailed sufficiently in advance of the February 19 meeting to allow the limited partners to act on the additional information, and that the DLP limited partners received inadequate consideration for the DLP assets contributed to P & P Petroleum.
 
 
 5
 In a March 1993 opinion reported at 147 F.R.D. 51, the district court, pursuant to Fed.R.Civ.P. 23, certified a class consisting of all persons who were limited partners in the Damson Limited Partnerships as of December 26, 1990. The court found, inter alia, that the claims asserted by the class representatives were typical, that the class representatives had shown an absence of conflicting interests between themselves and other class members, and that the several firms retained as class counsel were qualified, experienced, and capable. The court subsequently approved the form of notice, which was sent to class members, informing them that the action was pending and that they would have 30 days after the date of the notice in which to opt out of the class.
 
 
 6
 In the meantime, before the merger was approved at the February 19, 1991 special meeting of the DLP limited partners, an action had been commenced against certain of these defendants and others in New York state court on or about February 11, 1991, by DLP limited partner Dorothy Lindenauer (the "Lindenauer action"). The Lindenauer action was, inter alia, a class action on behalf of a class identical to the class in the Maywalt action and asserted breach of fiduciary duty in connection with the merger transaction. After the Maywalt action was filed in February 1992, the Lindenauer action was voluntarily stayed, and counsel for the plaintiff class in Lindenauer joined the firms representing the plaintiff class in Maywalt.
 
 
 7
 For some two years thereafter, the parties conducted vigorous discovery in Maywalt and engaged in extensive settlement negotiations concerning both the Maywalt and the Lindenauer actions. In early 1993, the district court designated Magistrate Judge Leonard Bernikow to oversee and facilitate the negotiations. After numerous settlement meetings before Magistrate Judge Bernikow, counsel for all parties and for defendants' insurer eventually executed a Stipulation of Settlement dated April 12, 1994.
 
 
 8
 Under the terms of the proposed settlement, defendants were to pay, directly or through their insurer, $8.25 million plus the cost of notifying the class of the proposed settlement and the cost of administering the settlement. The class members were to release "any of the claims for relief or causes of action which were or could have been asserted" in either the Maywalt action or the Lindenauer action "arising out of or in any way connected with or related to" the merger transaction. The stipulation and a proposed notice to be sent to the class members were submitted to the district court. The proposed notice indicated that, subject to the court's approval, each class representative, in addition to sharing in the settlement proceeds in proportion to his or her investment, would receive $5,000 for serving in that capacity. On May 4, 1994, the court preliminarily approved the proposed settlement and approved the notice to be mailed to the class. The court ordered that objections be filed no later than June 7; it scheduled a hearing for June 22.
 
 
 9
 Appellants decided to oppose the proposed settlement, and they sought to replace class counsel. By letters dated June 2, 1994, they so informed each of the firms serving as class counsel, stating that the firm was discharged and that appellants had retained William C. House, Esq., as new class counsel. On June 7, appellants moved in the district court to substitute House, stating that class counsel had failed to consult with appellants adequately about the proposed settlement. They also requested that an additional notice be sent to inform the other class members of appellants' actions.
 
 
 10
 Class counsel and the defendants opposed the motion, characterizing it as an attempt to scuttle the settlement. Class counsel submitted, inter alia, the affidavit of Michael A. LaBazzo, a partner in one of the class-counsel firms, setting forth in detail the numerous conversations he had had with the class representatives, especially those since January 1994 attempting to explain the proposed settlement to them. LaBazzo stated that, except for Maywalt's response that she thought she should be paid $10,000 instead of $5,000 as a class representative, he had received no indication at any time prior to his receipt of appellants' June 2 letter, purporting to discharge class counsel, that any class representative objected to the substance of the proposed settlement.
 
 
 11
 Maywalt replied with an affidavit stating, inter alia, that the class representatives were concerned that the amounts to be paid to individual investors were small and that the attorneys' fees would be large. Maywalt stated that when she told LaBazzo she would prefer to receive the higher compensation for having served as a class representative, she was only joking.
 
 
 12
 In a memorandum opinion reported at 155 F.R.D. 494 (1994), the district court denied appellants' application to replace class counsel. Characterizing the duties of class representatives following class certification as "amorphous," 155 F.R.D. at 496 n. 5, the court stated that the role of class counsel is generally greater than that of the class representatives in protecting the interests of absent class members, and that class counsel have a duty to protect the interests of the majority of the class even if the named plaintiffs hold a different view:
 
 
 13
 Absent a finding of conflict of interest, ... no additional legal obligation--including a fiduciary obligation--appears to have been imposed upon class representatives under Rule 23(a)(4) by the Courts. By way of contrast, the legal obligations of Class Counsel, once certified as such, appear to extend much further than those imposed upon Class Representatives.
 
 
 14
 Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors.... [T]he compelling obligation of class counsel in class action litigation is to the group which makes up the class.... To that end, Class Counsel must act in a way which best represents the interests of the entire class and is not dependent on the special desires of the named plaintiffs.
 
 
 15
 155 F.R.D. at 496 (internal quotation marks omitted).
 
 
 16
 With regard to the present case, the court noted that it had already certified the class representatives and class counsel pursuant to Rule 23(a)(4) after finding that appellants had no interests conflicting with those of the class and that counsel were qualified, experienced, and capable. The court stated that there was no indication that class counsel had failed to carry out their responsibilities, and it concluded that appellants' attempt to discharge class counsel was belated and largely baseless:
 
 
 17
 In this case, no allegation of impropriety on behalf of Class Counsel has been made by the Moving Representative Plaintiffs. Further, no evidence has been proffered indicating that Class Counsel has in some[ ]way undermined the rights of the larger class and such concerns will be properly heard by this court at the duly noticed time of the Settlement Hearing. In fact, the heart of this application stems from the perceived inadequacy of communication between Class Counsel and the Moving Representative Plaintiffs, an event which is perhaps unbecoming, but based on the submissions here, does not constitute a level of impropriety necessitating the drastic remedy of a Court ordered discharge of Class Counsel. In the absence of concretely alleged acts of impropriety by the duly certified Class Counsel, or a showing [of] abridgment of a significant minority of the Class' rights, this Court will not grant the hasty application of the Moving Representative Plaintiffs to replace Class Counsel on the eve of the Settlement Hearing.
 
 
 18
 Id. at 497.
 
 
 19
 Noting that any objections to the merits of the proposed settlement could be addressed at the scheduled hearing, the court encouraged appellants to retain House to represent them individually in order to present their objections. The court stated that "[t]he fact that four of the five Representative Plaintiffs object to the Proposed Settlement will weigh heavily in the Court's evaluation as to the fairness, adequacy and reasonableness of the Proposed Settlement," though the mere fact of their objecting would not be dispositive. Id. The court also denied the request that an additional notice be sent to absent class members notifying them of appellants' opposition to the proposed settlement.
 
 
 20
 The hearing on the proposed settlement was commenced as scheduled on June 22. The court agreed to give appellants additional time to permit House to obtain the discovery materials previously collected by class counsel and to submit appellants' objections in writing, to be followed by additional oral argument on July 18. Appellants were represented by House at both hearings and objected to the settlement's valuation of certain of the Damson Limited Partnerships' assets and the Parker & Parsley Partnerships' assets. They also contended that there were potential claims against defendant Barrie M. Damson, the chief executive officer of both DOC and the Damson Limited Partnerships, arising out of the renegotiation in 1989 of reserve insurance policies owned by certain of the Damson Limited Partnerships (the "reserve-insurance claim"). Appellants argued that there was a risk that the reserve-insurance claim would be released by the settlement, that the value of that claim had not yet been ascertained, and that the court therefore could not yet determine whether the settlement was fair and should be approved.
 
 
 21
 In an opinion dated October 3, 1994, and reported at 864 F.Supp. 1422, the district court rejected all of appellants' objections. As to appellants' concern for the release of the reserve-insurance claim, the court found both that the reissuance of the insurance policies had "little or no factual connection or logical relevance to the issues pleaded" in either of the two class action complaints, 864 F.Supp. at 1432, and that the release in the proposed settlement agreement referred only to potential claims "arising out of or in any way connected to the [merger transaction]," id. at n. 7. The court concluded that the reserve-insurance claim was irrelevant to the fairness of the settlement.
 
 
 22
 Overruling all objections, the court approved the proposed settlement, finding it to be fair, adequate, and reasonable. Final judgment was entered, and this appeal followed.
 
 II. DISCUSSION
 
 23
 On appeal, appellants contend principally (1) that, as class representatives, they had the right to discharge class counsel in order to protect the interests of the class, and (2) that the notice of the proposed settlement was inadequate because it did not inform the class that the class representatives were opposed. They also contend that the district court abused its discretion in approving the settlement because it failed to consider the value of the reserve-insurance claim. We find all of appellants' contentions to be without merit.
 
 A. The Attempt To Discharge Class Counsel
 
 24
 Inherent in any class action is the potential for conflicting interests among the class representatives, class counsel, and absent class members. "The interest of lawyer and class may diverge, as may the interests of different members of the class...." Plummer v. Chemical Bank, 668 F.2d 654, 658 (2d Cir.1982) (internal quotation marks omitted). Both class representatives and class counsel have responsibilities to absent members of the class. Under Rule 23, the court cannot properly certify the action to proceed as a class action unless it is satisfied that the representative plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Thus, class certification may properly be denied "where the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 727 (11th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 1221, 99 L.Ed.2d 421 (1988). Once the action has been certified to proceed as a class action, it is incumbent on the class representatives to be alert for, and to report to the court, any conflict of interest on the part of class counsel, as for example, counsel's greater concern for receiving a fee than for pursuing the class claims. See generally 7A C. Wright, A. Miller, & Mary Kay Kane, Federal Practice and Procedure Sec. 1769.1, at 386-87 (1986) ("Wright Miller & Kane").
 
 
 25
 The fact that the named plaintiffs in a certified class action have been found to be adequate representatives of the class does not, however, mean that they have the right to replace class counsel at will. The identity of class counsel will have been one of the components of the district court's precertification consideration under Fed.R.Civ.P. 23(a)(4) as to whether the named plaintiffs are adequate representatives of the class. See, e.g., Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir.1968) (attorney must be "qualified, experienced and generally able to conduct the proposed litigation"); see generally Wright Miller & Kane Sec. 1769.1, at 375. The attorneys themselves have an obligation to all of the class members, and "when a potential conflict arises between the named plaintiffs and the rest of the class, the class attorney must not allow decisions on behalf of the class to rest exclusively with the named plaintiffs." Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1176 (5th Cir.1978), cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979); cf. Saylor v. Lindsley, 456 F.2d 896, 899-900 (2d Cir.1972) ("assent of the plaintiff (or plaintiffs) who brought a derivative stockholder's action is not essential to a settlement; a contrary view would put too much power in a wishful thinker or a spite monger to thwart a result that is in the best interests of the corporation and its stockholders").
 
 
 26
 The ultimate responsibility to ensure that the interests of class members are not subordinated to the interests of either the class representatives or class counsel rests with the district court. See, e.g., In re "Agent Orange" Product Liability Litigation, 996 F.2d 1425, 1438 (2d Cir.1993) ("A judge in a class action is obligated to protect the interests of absent class members."), cert. denied, --- U.S. ----, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994); Grant v. Bethlehem Steel Corp., 823 F.2d 20, 22 (2d Cir.1987) ("In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately.' "); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 964 (3d Cir.1983) ("The court [i]s required to ... consider whether class counsel provided fair and adequate representation to the class as a whole."). Thus, where there is a dispute between class counsel and the class representatives as to the course to be followed, the decision "cannot rest entirely with either the named plaintiffs or with class counsel." Pettway v. American Cast Iron Pipe Co., 576 F.2d at 1177. The choice between the views of counsel and those of the representatives must rest with the district court. See, e.g., id. at 1178 ("[w]here the named plaintiffs wish to appeal, but the class attorney concludes that an appeal is not in the best interest of the class, the district court must exercise its discretion in deciding whether to substitute class counsel to allow the named plaintiffs to maintain the appeal on behalf of the class"). Given the familiarity of the district court with the proceedings, the parties, and the performance of counsel, we will review that court's decision only for abuse of discretion.
 
 
 27
 We see no abuse of discretion here. The district court found that appellants had not alleged or proven that class counsel had engaged in any improper conduct or had in any way undermined the rights of the class at large. Appellants have pointed to nothing in the record that contradicts this observation. They sought to allege that counsel had a conflict of interest by contending that the amounts to be received by individual class members were small in comparison to the amount to be requested in legal fees. Such a disparity occurs without any conflict of interest in many class actions, and the supervision of settlement negotiations by a magistrate judge, as occurred here, makes it less likely that the disparity represents class counsel's promotion of their own interests over those of the class. The district court, in stating that there was no indication that class counsel had failed to carry out their responsibilities to the class nor any evidence of impropriety, implicitly found that appellants' presentation was insufficient to show a conflict of interest. The record supports the district court's characterization of appellants' attempt to discharge class counsel as a "hasty" move "on the eve of the Settlement Hearing," and we see no basis for overruling its conclusion that granting appellants' application at the eleventh hour would be a disservice to the class at large. Accordingly, we uphold the order denying appellants' motion to discharge counsel substantially for the reasons stated in Judge Sweet's June 22, 1994 opinion reported at 155 F.R.D. 494.
 
 B. Notice of Appellants' Opposition
 
 28
 Appellants' contention that the absent class members were given inadequate notice of the proposed settlement because they were not informed that appellants objected to the settlement is also without merit. Due process requires that the notice to class members "fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir.1982) (internal quotation marks omitted), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); see also Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 307, 314, 70 S.Ct. 652, 653, 657, 94 L.Ed. 865 (1950) (notice concerning judicial settlement of common trust fund); In re Drexel Burnham Lambert Group Inc., 995 F.2d 1138, 1144 (2d Cir.1993) (notice of settlement sent pursuant to Fed.R.Bankr.P. 2002). This requirement was met here.
 
 
 29
 First, there is no suggestion by appellants that the notice given here failed in any way to set out clearly the terms of the proposed settlement or to inform class members of their right to object. Further, the original notice contained no statement as to appellants' views that was either inaccurate when that notice was sent or out-of-date by the time of the hearing, for the original notice did not state the views of the class representatives at all; it said merely that the proposed settlement was viewed as fair by "Plaintiffs' Counsel." Finally, though appellants assert that the fact of their opposition to the settlement was a material fact of which absent class members should have been made aware, the court was entitled to conclude on the present record, given the basis for appellants' position, that their "hasty" opposition was not sufficiently material to warrant an additional notice and a further delay of the scheduled hearing.
 
 C. The Reserve-Insurance Claim
 
 30
 Finally, we reject appellants' contention that the district court's approval of the settlement was an abuse of discretion in light of the possible reserve-insurance claim. Before approving a proposed class action settlement, the district court must determine that the settlement, taken as a whole, is fair, reasonable, and adequate. See Weinberger v. Kendrick, 698 F.2d at 73; Grant v. Bethlehem Steel Corp., 823 F.2d at 24. "The trial judge knows the litigants and the strengths and weaknesses of their contentions and is in the best position to evaluate whether the settlement constitutes a reasonable compromise." Handschu v. Special Services Division, 787 F.2d 828, 833 (2d Cir.1986). Therefore, "a district court's disposition of a proposed class action settlement should be accorded considerable deference," Weinberger v. Kendrick, 698 F.2d at 73, and is reviewed for abuse of discretion, see In re Ivan F. Boesky Securities Litigation, 948 F.2d 1358, 1368 (2d Cir.1991).
 
 
 31
 In determining whether a proposed settlement is fair, reasonable, and adequate, "[t]he primary concern is with the substantive terms of the settlement: 'Basic to this ... is the need to compare the terms of the compromise with the likely rewards of litigation.' " Weinberger v. Kendrick, 698 F.2d at 73 (quoting Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968)); see also County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1324 (2d Cir.1990); Handschu v. Special Services Division, 787 F.2d at 833.
 
 
 32
 Appellants do not dispute the district court's finding that the reserve-insurance claim was not asserted in either the Maywalt or the Lindenauer action. Nor did they provide any evidence tending to establish either the merit or the value of that claim. Whether or not the claim would be extinguished by the release to be given in the settlement, the court is entitled to conclude that the mere proffer of the prospect of a claim that has neither been asserted nor substantiated nor evaluated by the proffering party should not impede the settlement of the class action. We see no abuse of discretion here in the district court's conclusion that recovery on that unasserted claim was not one of the likely rewards of the litigation.
 
 III. CONCLUSION
 
 33
 We have considered all of appellants' contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.