17-1062-pr
Irvin v. Harris

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2018

(Argued: February 7, 2019                  Decided: November 19, 2019)

Docket No. 17-1062-pr

_____

SAMUEL IRVIN,

*Plaintiff-Appellant*,

DANIEL MILLER, DEMETRIO LIFREIRI, EUGENE MAZZIO,

*Intervenors*,

LOUIS MILBURN, A. BROWN, FOR CLASS OF LOUIS MILBURN,

*Plaintiffs*,

v.

DAVID R. HARRIS, SUPERINTENDENT, GREEN HAVEN
CORRECTIONAL FACILITY; THOMAS A. COUGHLIN, III,

*Defendants-Appellee*s,

HENRY S. DOGIN, ADMINISTRATOR LAW ENFORCEMENT
ASSISTANCE ADMINISTRATION, UNITED STATES DEPARTMENT

OF JUSTICE; PATRICIA HARRIS, SECRETARY OF HEALTH
EDUCATION AND WELFARE,

*Defendants.*
_____

Before: POOLER, LOHIER, and CARNEY, *Circuit Judges.*

Samuel Irvin appeals from an order entered in the United States District Court for the Southern District of New York (Preska, *J.*), denying Irvin's motion under Federal Rule of Procedure 60(b) to reconsider termination of the Milburn consent decree. We hold that Irvin has standing to invoke Rule 60(b) to challenge the termination because he is sufficiently connected with the underlying litigation and his interests are strongly affected by the termination. We also hold that the termination of the consent decree violated Rule 23(a)(4) and the Due Process Clause because the class was inadequately represented at the times relevant to the termination proceedings.

Accordingly, we reverse the denial of relief under Rule 60(b) and remand to the district court for further proceedings.

REVERSED and REMANDED.

Judge Lohier concurs in a separate opinion.

2

_____

BRIAN MARC FELDMAN, Harter Secrest & Emerly LLP, Rochester, NY (Gregory M. Dickinson, *on the brief*), *for Plaintiff-Appellant Samuel Irvin and Intervenors Daniel Miller, Demetrio Lifreiri, and Eugene Mazzio.*

MARC S. GRUBE, Assistant Solicitor General (Steven C. Wu, Deputy Solicitor General, *on the brief*), *for* Barbara D. Underwood, Attorney General, State of New York, New York, NY, *for Defendants-Appellees David R. Harris and Thomas A. Coughlin, III.*

POOLER, *Circuit Judge*:

Samuel Irvin appeals from an order entered in the United States District Court for the Southern District of New York (Preska, J.), denying Irvin's motion under Federal Rule of Civil Procedure 60(b) to reconsider termination of the Milburn consent decree. We hold that Irvin has standing to invoke Rule 60(b) to challenge the termination because he is sufficiently connected with the underlying litigation and his interests are strongly affected by the termination. We also hold that the termination of the consent decree violated Rule 23(a)(4) and the Due Process Clause because the class was inadequately represented at the times relevant to the termination proceedings.

# BACKGROUND

This case stems from a termination of a consent decree in 2015 that was first entered by the district court in 1982. The consent decree's objective was to ensure that inmates at Green Haven Correctional Facility had access to adequate medical care. In September 1979, Louis Milburn, then an incarcerated inmate at Green Haven, filed a pro se complaint alleging deficiencies in its provision of health care services. In April 1980, Milburn, at this time represented, filed an amended complaint with 13 other co-plaintiff class representatives, alleging that Green Haven's health care services were so inadequate that they violated their Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. The district court subsequently certified a class of "all persons who are or will be confined at the Green Haven Correctional Facility" in December 1980. Joint App'x at 105.

Eventually the parties stipulated to an entry of final judgment whereby plaintiffs agreed to discontinue the action in exchange for certain reforms. In August 1982, the district court entered a consent decree providing injunctive relief to the class members.

4

About seven years later, plaintiffs filed a motion to hold the Green Haven defendants in contempt for violating the 1982 consent decree and to modify the consent judgment to achieve its original purpose. In response the district court appointed a medical auditor, Dr. Robert Cohen, who determined that Green Haven was not in compliance with the consent judgment and recommended additional modifications to improve health care at the facility. In 1991, the parties entered a proposed stipulation for entry of a modified judgment, and plaintiffs withdrew their motion when defendants agreed to amend the 1982 consent decree. As with the 1982 consent decree, the court entered the 1991 consent decree after concluding that the settlement was "fair, adequate and reasonable to all members of the plaintiff class." Joint App'x at 200.

Meanwhile, Dr. Cohen continued to audit Green Haven's health care system for the next 23 years. His three-year term was repeatedly extended because Green Haven was not in full compliance with the 1991 consent decree. In his most recent report in 2014, Dr. Cohen finally found that Green Haven was in compliance with the terms of the modified final judgment.

In July 2014, defendants moved to terminate the consent decree under Section 802 of the Prison Litigation Reform Act ("PLRA") of 1995, 18 U.S.C. §

5

3626, on the basis that the consent judgment was no longer necessary "to correct a current and ongoing" violation of any constitutional right and that, even if some unconstitutional conditions persisted, the judgment was not the least intrusive means necessary to correct the violation. Joint App'x at 385-86.

Initially, class counsel opposed and filed a cross-motion to modify the 1991 consent decree to address ongoing deficiencies. But on August 15, 2014, class counsel wrote a letter to certain inmates—specifically, "all class members with whom counsel had any contact in the preceding two years," Appellant's Reply Br. at 2 n.3—including Irvin and intervenor Demetrio Lifreiri, explaining why counsel believed that the risk of an adverse decision should be avoided. Class counsel also explained that they had not yet made a "final decision" on how to proceed but they would nonetheless continue with discovery. Joint App'x at 344.

Without further notice to any class members, class counsel next informed the district court by letter dated March 2, 2015, that they would no longer oppose termination. The letter informed the court that "Plaintiffs have agreed to withdraw" their opposition to the motion to terminate, and that their opposition was "based on the representation by counsel for Defendants that [certain Green Haven officers] will promptly meet in person with Plaintiffs' expert . . . to enable

6

[him] to present his expert findings and recommendations with respect to medical care and record keeping at Green Haven." Joint App'x at 288. On March 4, 2015, again without any notice to the class members, the district court noted the withdrawal, so-ordered class counsel's letter, and terminated the consent decree. It is undisputed that at the time of termination, neither Louis Milburn, nor any of the other class representatives, were still incarcerated at Green Haven. Class counsel then informed certain class members by letter dated March 11, 2015 that the consent decree had been terminated. Appellant's Reply Br. at 6 n.5.

In June 2016, Irvin, a Green Haven inmate who was a member of the Milburn class, filed the pro se Rule 60(b) motion at issue in this appeal, seeking to set aside the district court's termination order. Irvin purported to move on behalf of himself and the entire "class of prisoners at [the] Green Haven." Joint App'x at 295.[1] Specifically, his motion called attention to Green Haven's "cutting back on all the supplies," its "eliminat[ion] [of] one of the day nurses and all the

---

[1] Three Green Haven prisoners submitted letters to the district court in February 2017, notifying it that Irvin "has not been authorized by any other Milburn Class Member to engage in any type of negotiation or deal with the Defendants or their Counsel." Joint App'x at 63. In the letters, the prisoners explained that they had "already been burned once" when class counsel "engaged in negotiations" and agreed to termination "without any input by the Class." Joint App'x at 357, 359, 361.

7

emergency call buttons" in prisoners' cells, and its "elimination of the overnight nurse all together." Joint App'x at 323.[2]

The district court denied Irvin's Rule 60(b) motion on two grounds. First, it concluded that Irvin lacked standing to bring a Rule 60(b) motion because he was merely a class member rather than a named class representative. Second, it construed Irvin's filing as a motion for relief under Federal Rules of Civil Procedure 60(b)(1) and 60(b)(3), so it denied it as untimely under Rule 60(c), which requires that motions under subsections "(1), (2), and (3) [be made] no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c). Even construing the motion under the catchall provision, Rule 60(b)(6), the court found that Irvin had not shown the "extraordinary circumstances" required for relief.

---

[2] Nine Green Haven prisoners, including Irvin and intervenor Demetrio Lifreiri, submitted pro se motions to amend the complaint in March 2017, and to "place [their] name[s] on the mailing list, so that [they] can be . . . full participant[s] in the proceedings." *See e.g.*, Joint App'x at 363. Irvin asserts that "[t]he intent, evidently, was to amend the complaint to add the prisoners as named class representatives in the case caption, as the court had done many years earlier for the original class representatives by order dated April 11, 1980." Appellant's Br. at 16 (citing Joint App'x at 2). The court construed the motions to amend as Rule 60(b) motions to reopen, so it denied them.

Irvin then timely appealed the denial of his Rule 60(b) motion. This Court appointed pro bono counsel to represent Irvin, instructing counsel

> to brief, among any other issues, whether: (1) Appellant had standing to move for relief from the order terminating the consent decree (including whether he could have objected to class counsel's decision to withdraw its opposition to the defendants' motion to terminate that decree); (2) his motion for relief was timely under Federal Rule of Civil Procedure 60(b);[3] and (3) he demonstrated extraordinary circumstances for such relief (including whether the existence of extraordinary circumstances could have been determined on the motion papers alone).

Order, Dkt. No. 49.

In January 2018, Green Haven inmates Demetrio Lifreiri, Eugene Mazzio, and Daniel Miller moved to intervene in the appeal. This Court granted the motion. The intervenors also sought to reverse the district court's order denying Irvin's pro se Rule 60(b) motion.

---

[3] On appeal, Green Haven does not argue that Irvin's motion—to the extent it is made pursuant to Rule 60(b)(4)—was untimely. *See "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123-24 (2d Cir. 2008) ("[A] motion under Rule 60(b)(4)[] must be made 'within a reasonable time,' [but] this Court has been exceedingly lenient in defining the term 'reasonable time,' with respect to voidness challenges. In fact, it has been oft-stated that, for all intents and purposes, a motion to vacate a . . . judgment as void 'may be made at any time.'").

## DISCUSSION

Irvin argues on appeal that the district court's judgment is void under Federal Rule of Civil Procedure Rule 60(b)(4) because it violated due process. In particular, he argues that (1) the class was not adequately represented, and that (2) the district court was required to provide notice to the class or conduct a fairness hearing. Because we agree with Irvin's first argument, we do not address the second.

Generally, we review a district court's ruling on a Rule 60(b) motion for abuse of discretion. *Lawrence v. Wink (In re Lawrence)*, 293 F.3d 615, 623 (2d Cir. 2002). But when we consider a Rule 60(b)(4) motion challenging a judgment obtained without due process, "a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) (internal quotation marks omitted). Indeed, Rule 60(b)(4) "is unique . . . because relief is not discretionary and a meritorious defense is not necessary." *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 n.3 (2d Cir. 1980).

## I.    Forfeiture

At the outset, we determine that Irvin has preserved his argument that the district court's judgment is void under Federal Rule of Civil Procedure 60(b). "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted) (emphasis in original). In his pro se Rule 60(b) motion, Irvin argued that the termination should be rescinded because, among other arguments: (1) if class counsel had just "taken the time to come to the prison and seen for themselves, by interviewing some of the class members themselves, they would have gotten completely different opinions," Joint App'x at 304; (2) class counsel "lacked enough information and the authority to withdraw the opposition to the termination," Joint App'x at 315; and (3) class counsel withdrew their objections to termination "without consulting with any of the individual members of the class, especially, those inmates housed in the Unit for the Physically Disable[d]," Joint App'x at 299. Taken together, Irvin argued that his interests were not adequately represented, even if he did not make the more

11

specific point that the named representatives were no longer incarcerated at

Green Haven. Therefore, Irvin's Rule 60(b) argument is preserved.

## II. "Standing"[4]

The district court concluded that Irvin lacked standing to bring his Rule

60(b) motion because he was a member of the Milburn class but not a named

class representative. On appeal, Irvin argues that he had standing to bring his

Rule 60(b) motion on two alternative bases: a) that he is a party under the

Supreme Court's rationale in *Devlin v. Scardelletti*, 536 U.S. 1, 3 (2002) (holding

that nonnamed class members have standing where they "objected in a timely

manner to approval of [a] settlement at [a] fairness hearing"), *id.* at 14, and b) if

he is a nonparty, he nonetheless has standing pursuant to this Circuit's case law

concerning circumstances where a nonparty's interests are strongly affected. We

agree with Irvin as to the latter ground.

---

[4] Although the district court referred to Irvin's "standing," Joint App'x at 388-89, the Supreme Court has made clear that "what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)); *see Devlin v. Scardeletti*, 536 U.S. 1, 6-8 (2002). For ease of reference, however, we refer to Irvin's right to relief under the rule as his "standing."

Under Rule 60(b), a motion to reopen a final judgment may be brought only by "a party or its legal representative." Fed. R. Civ. P. 60(b). Generally, a nonnamed class member is not a "party" to the underlying class action for purposes of Rule 60(b). *See Devlin*, 536 U.S. at 9-10. Nonetheless, we have allowed non-parties to bring Rule 60(b) motions under certain limited circumstances. The controlling cases on the issue of nonparty standing to invoke Rule 60(b), *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044 (2d Cir. 1982), and *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180 (2d Cir. 2006), are fact-specific.

In *Dunlop*, the Secretary of Labor brought an action against Pan Am alleging a pattern of discrimination in violation of federal law. 672 F.2d at 1047. After learning of the settlement that resulted, former Pan Am employees filed a Rule 60(b) motion seeking relief from the judgment and requesting clarification that the stipulation of dismissal did not bar their own actions against Pan Am. *Id*. at 1048-49. The district court held that the former employees lacked standing because they were nonparties. *Id*. at 1051. We reversed, concluding that "[a]lthough Rule 60(b)(6) would not ordinarily be available to non-parties to modify final judgments, we hold that on the facts of this case appellants were

13

sufficiently connected and identified with the Secretary's suit to entitle them to standing to invoke Rule 60(b)(6)." *Id*. at 1052.

In our next key Rule 60(b) nonparty standing case, *Grace*, a group of minority shareholders brought a derivative action against a corporation and its majority shareholders to challenge a corporate merger. 443 F.3d at 183-84. The plaintiffs entered into a settlement of their claims against the corporation and an individual defendant, then tried to use the unsatisfied judgment from the settlement to pursue fraudulent conveyance actions against the creditors of the company. *Id*. at 185-86. The alleged conveyees filed a Rule 60(b) motion, which the district court granted, seeking to invalidate the judgment as the result of a settlement process tainted by due process violations. *Id*. at 186-87. We affirmed, concluding that even though the conveyees had not been parties to the earlier action, they were entitled to seek Rule 60(b) relief because their "interests [were] strongly affected" by the judgment that resulted. *Id*. at 188.

In the instant case, the district court concluded that Irvin did not qualify for nonparty standing because "nothing is 'sufficiently extraordinary' to warrant the extension of the *Dunlop/Grace* exception to the facts of this case." Joint App'x at 390 (quoting *Baker v. Gates*, 638 F. App'x 25, 29 (2d Cir. 2015)); *see also Federman*

14

*v. Artzt,* 339 F. App'x 31, 34 (2d Cir. 2009) ("Both *Dunlop* and *Grace* involved extraordinary circumstances in which a non-party had interests on which the outcome of the proceedings had significant consequences for the movants, yet those interests had not been adequately represented during litigation.") (internal quotation marks omitted).

While we cabined our decisions in *Dunlop* and *Grace* to the facts of those cases, *Grace*, 443 F.3d at 188, the troubling circumstances presented here also warrant extending to Irvin nonparty standing to invoke Rule 60(b). As we discuss in more detail below in connection with our conclusion that the Milburn class was inadequately represented, it is undisputed that no named representatives were present to protect the interests of the class during termination proceedings, because none of them were still incarcerated at Green Haven and no new representatives had been substituted in. This exemplifies "extraordinary circumstances in which a non-party had interests on which the outcome of the proceedings had significant consequences . . . yet those interests had not been adequately represented during litigation, because of the peculiar structure of [the] case." *Federman*, 339 F. App'x at 34. As a Green Haven inmate and member of the Milburn class, Irvin was "sufficiently connected and

identified with the . . . suit." *Dunlop*, 672 F.2d at 1052. Irvin is currently bound by the judgment terminating the consent decree. Surely Irvin's interest in obtaining adequate medical care—such as care that may include the presence of medical supplies, nurses, and emergency call buttons in prisoners' cells —is "strongly affected" by the judgment. *Grace*, 443 F.3d at 188.[5]

These circumstances are made more problematic by the fact that class counsel did not even notify class members of counsel's decision to withdraw opposition to the motion to terminate. Counsel's letter to class members on August 15, 2014, explained that a "final decision" had not been made as to how to proceed and that discovery was forthcoming. Joint App'x at 344. Counsel did not send the March 11, 2015, letter to class members until *after* counsel withdrew their motion in opposition and after the district court entered the termination order. Appellant's Reply Br. at 6. Significantly, both letters appear to have been sent only to class members "at Green Haven that [had] contacted [counsel] within the past two years." Appellant's Reply Br. at 6 n. 5; *see id.* at 2 n. 3.

---

[5] In denying Irvin's Rule 60(b) motion, the district court reasoned that "[i]t may be the case that Mr. Irvin and other inmates . . . have been inconvenienced by" the changes in medical care at Green Haven, such as Irvin's allegations regarding "the elimination of the overnight and morning nurses . . . as well as the elimination of emergency call buttons." Joint App'x at 392-93. We note that there have been no findings regarding Irvin's allegations.

16

In accordance with *Dunlop* and *Grace* and under these circumstances, where Irvin was not notified of counsel's decision to withdraw opposition until after the termination order was entered and no named representatives of an inmate class remained incarcerated at the facility in question when a longstanding consent decree was terminated, Irvin, a member of the class, has "standing" to invoke Rule 60(b) to challenge the judgment.

### III.    Adequacy of Representation

Class actions are an exception to the general rule that "one is not bound by a judgment" in a suit in which he or she is not a named party. *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (internal quotation marks omitted). Federal Rule of Civil Procedure 23 requires that "representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). And "the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

We conclude that the Milburn class was inadequately represented during the termination proceedings. For named class representatives to be "adequate" under Rule 23, "[t]wo factors generally inform [the inquiry]: (1) absence of conflict and (2) assurance of vigorous prosecution." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart*, 564 U.S. 338. For this reason, "[t]he named plaintiffs in a class action cannot represent a class of whom they are not a part, and can represent a class of whom they are a part only to the extent of the interests they possess in common with members of the class." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17 (2d Cir. 1981) (citation and internal quotation marks omitted).

Here, the class was defined as "all persons who are or will be confined at the Green Haven Correctional Facility." Joint App'x at 105. But none of the named class representatives remained incarcerated at Green Haven during any time period relevant to the termination proceedings, and no new representatives were substituted after the original representatives were released. There is no record evidence that any of the named plaintiffs retained "interests . . . in common" with the class, *Nat'l Super Spuds*, 660 F.2d at 17, which would provide "assurance of vigorous prosecution," *Robinson*, 267 F.3d at 170; *cf. Sosna v. Iowa*,

18

419 U.S. 393, 395-97, 403 (1975). In short, named representatives of a Green Haven inmate class certified 35 years before the relevant proceedings do not adequately represent the class when they are no longer Green Haven inmates and have not continued to pursue the litigation.

Contrary to appellees reasoning, adequate class counsel cannot make up for inadequate class representatives. "Both class representatives and class counsel have responsibilities to absent members of the class." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (citation omitted). The decision "as to the course to be followed . . . cannot rest entirely with either the named plaintiffs or with class counsel." *Id*. at 1079. Likewise, it is not incumbent upon class members to intervene to preserve their right to named representatives. Due process "requires that the named plaintiff *at all times* adequately represent the interests of the absent class members." *Phillips Petroleum Co.*, 472 U.S. at 812 (emphasis added). To ensure that named representatives do so, "an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection." *Id.* at 810.

In sum, the termination of the 1991 consent decree violated Federal Rule of Civil Procedure 23(a)(4) and the Due Process Clause of the Fifth Amendment because the class was inadequately represented. Accordingly, the termination judgment is void, and the district court's denial of Irvin's Rule 60(b) motion to set it aside must be reversed. After substituting new class representatives or otherwise addressing the deficiency in representation, the district court should once again provide the class "an opportunity to show current and ongoing violations of their federal rights" before terminating the litigation. *Benjamin v. Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999) (en banc).

## CONCLUSION

This case, in which class members seek an opportunity to obtain adequate medical care while incarcerated by the state, demonstrates the importance of adequate representation as required by Rule 23 and the Due Process Clause. We remind district courts that even for longstanding consent decrees such as the one here, the named representatives must adequately represent class members' interests at all times. For the foregoing reasons, the district court's denial of Irvin's Rule 60(b) motion is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

LOHIER, *Circuit Judge*, concurring:

I fully concur in the majority opinion. I write separately only to emphasize, as we have done in prior cases, the fact-specific nature of our holding, and to note that the majority opinion expresses no view on whether Irvin would have "standing" if he had received notice of counsel's decision to withdraw its opposition or if the inadequate representation had not occurred during such a critical phase of the litigation. See Grace v. Bank Leumi Tr. Co. of N.Y., 443 F.3d 180, 188 (2d Cir. 2006); Dunlop v. Pan Am. World Airways, Inc., 672 F.2d 1044, 1052 (2d Cir. 1982).